## NELSON, a slave, v. THE STATE.

1. An indictment under the second section of the fifteenth chapter of the penal code, for an assault with intent to kill, must, within the terms of the act, allege that the individual assaulted was a " white person ;" and an indictment which does not contain such an allegation, cannot be aided by a verdict finding the fact affirmatively.

2. Although the tenth section of the fifteenth chapter of the penal code provides, that at least two-thirds of the jury who try a slave for a capital offence, shall be slaveholders, yet it will be regarded as sufficient on error, if the judgment entry characterize the jury in such case, as " good and lawful men."

THIS cause comes here by a writ of error issued by the clerk of this court in vacation, pursuant to the order of one of its judges. From the record it appears that the plaintiff in error was indicted in the circuit court of Henry, for an assault "in and upon one

Stephen G. Williams," "with intent, then and there, and thereby falsely, wilfully, and of his malice aforethought, the said Stephen G. Williams to kill and murder."

The prisoner was tried on the plea of "not guilty," and the jury by their verdict said, "that they find the defendant guilty of an assault, with intent to commit murder; and also, Stepen G. Williams, the person named in the bill of indictment, to be a white person:" and the court pronounced the sentence of death against the prisoner. On the trial, the prisoner excepted to the instruction of the presiding judge to the jury, informing them that they could, if the proof authorized it, find by their verdict, that the person on whom the assault was alleged to have been committed, was a white person, notwithstanding there was no such allegation in the indictment. It does not appear from the judgment entry, or elsewhere in the record, that any of the jurors who tried the prisoner, were slave holders.

J. Cochran, for the plaintiff in error, insisted, that the indictment was defective, because it did not charge that the person assaulted was a *white person*, and the conviction could not be supported under the 2d section of the 15th chapter, of what is usually called the Penal Code, [Clay's Dig. 472,] nor by the 26th section of the 8th chapter of the same. [Clay's Dig. 442.] He cited the 10th section of the bill of rights; Archb. Crim. Plead. 51; 2 Hale's Pleas of the Cr. 170.

The indictment being bad, it follows, that the instructions to the jury cannot be sustained; for it is clear, that the finding of the jury must be adapted to the case stated, and cannot go beyond it. Again, the conviction is erroneous, because it does not appear from the judgment entry, or elsewhere, that two thirds of the jurors were slave holders. [Clay's Dig. 473, § 10.]

Attorney General, for the State.—The charge of the circuit court could not have prejudiced the prisoner. If the judgment was not warranted by the verdict, the objection should have been made so as to arrest it. [Layman v. Hendrix, 1 Ala. Rep. N. S. 212.] He admitted that The State v. Moses, [Minor's Rep. 393,] supported the objections to the indictment, but the 26th section of the 8th chapter of the Penal Code, virtually overruled that case. That the indictment is good at com-

mon law, was not denied; and the prisoner was obnoxious to the common law punishment. [1 Chit. Cr. Law, 289, 290; State v. Flanigan, June Term, '43; 2d sec. 15 chap. Penal Code, Clay's Dig. 472.] The record does not show that the requisite number of slaveholders were not on the jury who tried the prisoner, or that they were demanded and refused; the objection cannot be sustained.

COLLIER, C. J.—The second section of the fifteenth chapter of the Penal Code, enacts that "every slave who shall be guilty of murder, or commit an assault with an intent to kill any white person," &c. "and be thereof convicted, shall suffer death." [Clay's Dig. 472.] It is insisted, that as the prisoner has been prosecuted for the offence denounced by this section, and has been sentenced to the punishment which it inflicts, the indictment should have charged, that the individual on whom the assault was committed, is a *white person*. In the State v. Flanigan, at June '43, this court say, where a statute is introductive of a new offence, or an offence at common law is made a crime of higher nature; as where a misdemeanor is made a felony; or where a common law offence is made subject to an additional punishment, the indictment in either of these cases, should be drawn in reference to the statute creating, or changing the nature of the offence. But if the statute is only declaratory of what was previously an offence at common law, without adding to or altering the punishment, the indictment need not conclude against the form of the statute. So, where the words of a statute are descriptive of the nature of the offence, there, it is necessary to specify it in the particular words of the act. [The State v. Stedman, 7 Porter's Rep. 495; The State v. Duncan, 9 Porter's Rep. 260, and cases there cited. See also, United States v. Clark, 1 Gal. Rep. 497.]

Of whatever grade of offence an assault with intent to commit murder, may be at common law, it is quite certain that an assault with the intention to kill, without reference to the offence of which the accused would have been guilty, had his purpose been consummated, is a mere misdemeanor. The statute, therefore, which has been cited, in a legal point of view, greatly increases its enormity, and this furnishes a sufficient reason why the indictment should characterize, by a description of his color, the per-

son on whom the assault was committed. But it is insisted, that although the indictment may be insufficient, according to the rules of the common law, yet the twenty-sixth section of the eighth chapter of the Penal Code, cures all defects, and legalizes the conviction. That section is as follows: "All indictments for offences inhibited in this code, which are offences at common law, shall be good if the offence be charged or described according to the common law; and the party charged on conviction, shall receive the punishment prescribed by this act, nor shall the words, "force and arms," or "contrary to the form of the statute," be regarded as necessary in any indictment whatever; but indictments wanting these words, shall be deemed as effectual to all intents and purposes, as indictments having the same words in them."— [Clay's Dig. 442.] This is confessedly a most beneficial enactment, when properly interpreted, and must prevent the guilty from escaping punishment, or procrastinating the period of its infliction by the interposition of objections which merely defeat the administration of justice.

If upon a common law indictment for a misdemeanor, it were competent to impose the punishment which the statute prescribes for a felony, such a principle could not be applied in the case before us. The fact that the individual assaulted is a white person, aggravates the offence, and in point of enormity, makes it equal with murder itself, while such an outrage upon a colored person is regarded as a mere misdemeanor. How can it be assumed then, that the offence punished by the statute, was intended to be charged? Not because the one of lesser grade, though of kindred character, is usually proceeded against, otherwise than by indictment. This would be to assume the offence sought to be punished, was one which the law made capital, though from the indictment itself, it appeared to be subject to, comparatively, but little punishment.

We have seen, that according to the principles of the common law, an indictment founded upon a statute which creates an offence, or adds to its punishment, must bring the case within the terms of the statute; and that no argumentative inferences will supply the want of direct averments. But for the section cited from the eighth chapter of the Penal Code, this rule would be generally applied in this State; and in the present case, as the healing provision of that section, is inapplicable under the cir-

cumstances, the indictment is incurably defective. This seems to us to be the necessary conclusion, from the impracticability of determining otherwise than from argumentative inferences, what punishment is the consequence of a conviction upon such an indictment.

The instruction of the circuit judge to the jury, was clearly erroneous. No principle is better settled in the administration of criminal justice, than that the indictment must be sufficient in itself, and cannot be aided by the verdict, or any thing extrinsic.

2. It is provided by the 10th section of the fifteenth chapter of the Penal Code, that the trial of all slaves for capital offences shall be by the circuit court of the proper county, and at least two thirds of the jury shall be slaveholders. [Clay's Dig. 473.] This provision, it is insisted, makes it necessary to the regularity of the conviction in a case like the present, that the judgment entry should affirmatively show that the jurors were such as it prescribes. The judgment entry characterises the jury, by whom the prisoner was tried as "good and lawful men." Now the laws of this State prescribe the qualification of jurors generally, by requiring them to be householders or freeholders, at least twenty-one years of age, &c., yet it has never been thought necessary that the record should affirm, that the jury who tried a cause, were such persons as the statute required. The conclusion of law is, that the jurors were competent, unless the record shows the reverse to be true. We are unable to perceive why a different principle should be applied in a case like the present. The circuit court, in declaring that the jury are "good and lawful men," must be understood as saying that they were such as the law required to try the case submitted to them, even if it were allowable to raise, on error, the question of qualification, where the point was not reserved on the trial.

For the defectiveness of the indictment, the judgment of the circuit is reversed, and the prisoner is directed to be detained in custody to await further proceedings, or until he be legally discharged.