George (a freedman) v. The State.

---

## GEORGE (A FREEDMAN) *vs.* THE STATE.

[INDICTMENT AGAINST SLAVE FOR ROBBERY OF WHITE PERSON.]

1. *Repeal of criminal statutes applicable only to slaves, by abolition of slavery.*—The ordinance of the State convention of Alabama, adopted on the 22d September, 1865, by which slavery was declared to have been abolished and thereafter prohibited, abrogated all the criminal laws of the State which were applicable exclusively to slaves.
2. *Liability of freedman to conviction and punishment for offense committed whilst slave.*—Since the 22d September, 1865, there has been no law in force in this State, under which a freedman can be convicted and punished for the robbery of a white person, or an assault with intent to rob a white person, where the offense was committed by him while a slave.

FROM the Circuit Court of Marengo.
Tried before the Hon. JAMES COBBS.

WM. M. BROOKS, for the prisoner.
JOHN W. A. SANFORD, Attorney-General, *contra.*

JUDGE, J.—The prisoner was indicted, in 1862, as a slave, under section 3311 of the Code, which provides, that

every slave who robs, or commits an assault and battery with intent to rob, any white person, must, on conviction, suffer death. On the 27th day of September, 1865, he was tried and convicted; and, on the day after, was sentenced by the court to imprisonment in the penitentiary for the period of twenty years. He was sentenced under section 3104 of the Code, which provides, that any person who commits the crime of robbery, on conviction, must be imprisoned in the penitentiary, not less than ten years; which section had been made applicable to "free persons of color," by section 3505 of the Code. The section of the Code under which the prisoner was sentenced, had no application to him at the time of the commission of the offense; and the question is now presented, whether, under these circumstances, he was legally tried, convicted, and sentenced?

The State convention which assembled at the city of Montgomery, in September, 1865, adopted an ordinance on the 22d day of the same month, whereby it was declared, that the institution of slavery had been destroyed in this State, and that thereafter there should be neither slavery, nor involuntary servitude, in this State, otherwise than for the punishment of crime, whereof the party should be duly convicted. Provision was also made by the ordinance for the necessary changes in the fundamental law, and the necessary legislation, to adapt the State to its new condition. If, as one of the results of the war, the institution of slavery had not ceased to exist in this State, before the adoption of this ordinance, it certainly has had no existence since.

The institution of slavery, then, having been destroyed in this State, and its re-establishment prohibited, an important question arises, namely : What effect has this had upon the criminal statutes of the State applicable exclusively to slaves ? Do they remain in existence, or have they been abrogated? To determine this question properly, legal rules must be applied.

It is a well-settled principle of the law, that a subsequent statute, which is clearly repugnant to a prior one, necessarily repeals the former, although it may not do so in terms; and even if the subsequent statute be not repugnant in all its provisions to a prior one, yet, if the latter statute was

clearly intended to create the only rule that should govern in the case provided for, it repeals the original act. (Sedgwick on Stat. & Com. Law, 124.) The same principle necessarily applies, in the case of a statute made repugnant to the constitution by an amendment of the latter. In New York, a statute, passed under the constitution. of 1821, which prohibited the judges of the appellate courts from taking part in the decisions of cases determined by them when sitting as the judges of any other courts, was held to be virtually repealed by the constitution of 1846, which abrogated the constitution of 1821.—*Pierce v. Delamotie,* 1 Coms. 17; see, also, *Cass v. Dillon,* 2 Ohio, N. S. 607.

Is the constitution of this State, as amended, repugnant to the criminal statutes relating exclusively to slaves? One ignores the existence of slavery, and prohibits it from ever being re-established; the other recognizes slavery as existing, by creating offenses, and providing punishments, for slaves exclusively. It would be difficult to conceive of a repugnancy more general, direct, and palpable; and the consequence is, that all the statutes named have been abrogated.

It cannot be said, that the only effect the extinction of slavery had, as to these statutes, was to withdraw the subject-matter upon which they were to operate, but that still they exist as laws. It would be a solecism to say, that laws are in force, with no subject-matter in existence to which they relate; and to hold that they continue as laws, being in contravention, as they are, of the genius and policy of the State, as declared by its fundamental law, would be a conclusion to which we could not give our assent.

These statutes, then, having been abrogated, let us apply a legal principle, long established, and universally acknowledged, which, in the language of Judge Marshall, is, "that after the expiration or repeal of a law, no penalty can be enforced, nor punishment inflicted, for violations of the law committed while it was in force, unless some specific provision for that purpose be made by statute."—*Yeaton v. The United States,* 5 Cranch, 281; *The State· v. Tombigbee Bank,* 1 Stewart, 347; *Freeman v. The State,* 6 Porter, 372; *Pope v. Lewis,* 4 Ala. 487; *Broughton v. The Bank,* 17 Ala.

828; *The State v. Allaire*, 14 Ala. 435. And an eminent English judge has said, that "a statute repealed is obliterated as completely as if it had never passed, and it must be considered as a law that never existed, except for the purpose of those actions or suits which were commenced, prosecuted, and concluded, while it was an existing law." *Per* Tindal, Ch. J., in *Key v. Goodwin*, 4 Moore & Payne, 341.

Was there, in the process by which the statutes in question were superseded or annulled, any specific provision made for the enforcement of penalties which had been incurred under them while they were in existence? There was none; and there can be no judgment, in a case like the present, unless the law that was infringed is in force *at the time of the indictment, and of the judgment.*

It may, however, be said, that the statute under which the prisoner was indicted, was only declaratory of what was previously an offense at the common law; and that it did not add to, or alter, the common-law punishment for the offense, which was death; and that, therefore, the prisoner should have been sentenced to that punishment, under the common law, which was revived, as to his offense, by the abrogation of the statute. To this we say, that the statute in question was not merely declaratory of the common law; it created a distinct offense as to slaves; and the prisoner, if he had remained a slave, could not have been convicted under any indictment which did not aver that he was a *slave* when the offense was committed, and that the person robbed was a *white* person.—*Nelson v. The State*, 6 Ala. 394. And we may say, further, that even if the statute in question was but declaratory of the common law, yet, on its abrogation, the common-law punishment for robbery could not have been applied to the prisoner; for the punishment of death, for that offense, had long before been changed by statute, except as to slaves for the robbery of white persons; and when slavery ceased, in this State, the common-law punishment of death for robbery ceased as to all persons.

Section 3104 of the Code not having been applicable to the prisoner when the offense was committed, he could not have been legally sentenced under it. There was no pro-

mulgation of that law, as to him, *prior* to the commission of the offense.—Revised Const. Ala., art. I, § 8.

It results from what we have said, that it is unnecessary to pass upon any of the other questions presented by the record; and that the judgment and sentence of the court below must be reversed, and the appropriate order made in this court, for the discharge of the prisoner from the indictment in this case.

BYRD, J., did not sit in this case.