## THE STATE v. FLANIGIN.

1. An indictment for murder, framed as at common law and concluding against the form of the statute, will warrant the conviction under the fifth section of the third chapter of the "Penal Code," of a person, who shall, with malice aforethought, cause the death of a slave, by cruel, barbarous, or inhuman whipping, &c.; or under the sixth section, of an *overseer or manager* who shall cause the death of a slave by barbarous or inhuman whipping, or beating, &c.

2. Where a charge given to the jury in a criminal case, is not expressed in terms strictly appropriate; yet if it is not opposed to law, and can not be supposed to have misled them, it will not be considered an error for which the judgment consequent upon a verdict of guilty should be reversed.

3. The jury were informed that if they found the accused guilty of one grade of an offence, the punishment which the law required the court to inflict, was imprisonment in the Penitentiary for a period not less than two, nor more than ten years:—*Held*, that although ten years was the shortest period for which the court was authorised to imprison in such cases, yet the error was not fatal to the judgment, as it could not have influenced the jury in the performance of their duties.

The prisoner was indicted in the circuit court of Jackson, for the murder of a negro man, a slave, named Jacob. The indictment contains four counts drawn in the usual form, all alleging the death to have been occasioned by whipping and striking; in the first, the slave is alleged to have been the property of Joel H. Chambless; in the second, of persons unknown; in the third, of a person unknown; and in the fourth of Joel H. Chambless as trustee for Salina Glascock and her children.

It is stated in a paper purporting to be a bill of exceptions, that all the evidence adduced on the trial, which was deemed material, is set-out therein. Without attempting to recite the facts with particularity, it may be enough to say, they shew, that the prisoner was an overseer of Robert Freeman, on his plantation in Jackson county; that the slave Jacob lived with Freeman; that the prisoner was seen on the evening of the slave's death, to whip him and strike him about the head with the handle of the whip, and a short time afterwards he was found dead, near where the prisoner was last seen to strike him. A physician, who made a *post mortem* examination of the body of Jacob, stated, that it gave evidence that many blows and stripes had been inflicted with great violence; all of which together, he thought sufficient to cause his death.

The Judge, in his charge to the jury, among other things, referred to sections five and six of the chapter "of offences against the persons of individuals," contained in the penal code. He instructed the jury, that the offence charged against the defendant in the bill of indictment, was embraced by those sections, and they might find the defendant guilty of murder in the first degree under the fifth section, in which event, they might, in their discretion, inflict upon him the punishment of death, or confinement in the penitentiary for life; or they might find the defendant guilty of murder in the second degree, under the sixth section; in which last event, it would be in the discretion of the court, and not of

the jury, to determine the punishment, *which would not be less than two, nor more than ten years.*

The jury found the prisoner guilty of murder in the second degree, and he was thereupon sentenced by the court to ten years imprisonment in the penitentiary; and thereupon the questions of law arising upon the charge of the circuit judge to the jury, have been referred to this court for its decision, as novel and difficult.

S. PARSONS, for the prisoner. The court should not have instructed the jury, that they might find the prisoner guilty, either under the fifth or sixth section of the law referred to in the charge. 'It was calculated to mislead the jury by inducing them to believe that the court thought him guilty of the former, but would be satisfied, if he was found guilty of the latter offence. *Again;* by saying that the punishment inflicted, if guilty, under the sixth section, was from two to ten years, instead of not less than ten years imprisonment in the penitentiary, the jury may have been less cautious in scaning the evidence, and found the prisoner guilty upon less satisfactory proof than they would otherwise have required.

The sixth section applies to the case of an overseer who inflicts such punishment upon a slave, under his direction, as to cause death. Although the prisoner was an overseer, yet not being indicted under that section, he cannot be found guilty of the offence it denounces. Nor can an overseer be punished under that section, where he kills a slave by excessive punishment, where there was *any cause* for the infliction of chastisement.

The sixth section *expressly* excepts from its sanction, such as kill in self-defence, yet a reasonable construction would make other exceptions, and the most convenient decision would be to hold where there is any cause for the homicide, it does not apply to such a case—leaving all such cases to be proceeded against under the old law. [1 Blacks. Com. 41, 61, 88.]

The proof is insufficient, and is variant from the indictment in respect to the ownership of the slave who was killed.

ATTORNEY GENERAL, for the State.

COLLIER, C. J.—The counsel for the prisoner has made several points, but we think the charge of the court excepted to,

and which has been referred to this court for revision, raises only one question. We are not to inquire into the sufficiency of the evidence to warrant the conviction, nor are we to speculate about the correctness of the other instructions to the jury, of which the bill of exceptions does not inform us. The single question is, will an indictment for murder, framed as at common law, but concluding against the form of the statute, warrant a conviction for the offences described in the fifth and sixth sections of chapter third, of what is called the *Penal code*.

The first and second sections of that chapter, distinquish between murder in the first, and murder in the second degree, and declare the constituents of each grade of the offence, and provide that the first shall be punished with death, or imprisonment for life in the penitentiary, at the discretion of the jury; the latter is punishable by imprisonment in the penitentiary, for a period not less than ten years. The fifth and sixth sections are as follows: "5. If any person shall with malice aforethought, cause the death of a slave by cruel, barbarous or inhuman whipping or beating, or by any cruel or inhuman treatment, or by the use of any instrument in its nature calculated to produce death, such killing shall be deemed murder in the first degree." "6. If any person being the overseer or manager of any slave or slaves, or having the right to correct such slave or slaves, shall cause the death of the slave by such barbarous or inhuman whipping or beating, or by any other cruel or inhuman treatment, although without intention to kill, or shall cause the death of any such slave or slaves by the use of an instrument in its nature calculated to produce death, though without intention to kill, unless in self-defence, such killing shall be deemed murder in the second degree."

Where a statute is introductive of a new offence, or an offence at common law, is made a crime of a higher nature, as where a misdemeanor is made a felony; or where a common law offence is made subject to an additional punishment, the indictment in either of these cases should be drawn in reference to the statute creating or changing the nature of the offence; but if the statute is only declaratory of what was previously an offence at common law, without adding to, or altering the punishment, the indictment need not conclude against the form of the statute. [1 Chit. Crim. L. 290; Russell v. Commonwealth, 7 Serg. & R. Rep. 484; Commonwealth v. Searll, 2 Binn. Rep. 339.] In The People v.

Guoch, [13 Wend. 159,] the prisoner was convicted of murder for an offence committed subsequent to the revised statutes of New York, upon an indictment framed according to the form usual in practice previous to the revision; the cause was removed both to the Supreme court and Court of Errors, and affirmed by the unanimous opinion of each court. The question was, whether the revised statutes in which the crime of murder is attempted to be defined and declared, made it necessary to change the common law form of the indictment for an offence of that description. The revised statutes provide, that the killing of a human being, unless it be manslaughter, &c., as afterwards' prescribed, shall be murder in the following cases, namely: 1. When perpetrated from a premeditated design to effect the death of the person killed, or of any human being. 2. When perpetrated by an act imminently dangerous to others, and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual. 3. When perpetrated without any design to effect death, by a person engaged in the commission of any felony." Both the Supreme court and the Court of Errors, were of opinion, that the modification of the law, did not require the form of the indictment to be changed. It was observed by the latter, that " such changes in the law of murder have often occurred, both in this country and England; yet it never has before been thought necessary to change the common law form of the indictment to meet cases of this description. The court and jury in such cases, immediately apply the common law principle, and the killing is adjudged to be murder or manslaughter, according to the nature and quality of the crime that the offender was perpetrating at the time the homicide was committed." And further, " a defendant cannot be convicted on such an indictment, of a felonious homicide, with malice aforethought, unless the evidence is such as to bring the case within the statutory definition of murder."

In the case of the State v. Guy Rains, [3 McC. Rep. 543,] the prisoner was indicted under the statute of South Carolina, to increase the punishment inflicted on persons convicted of murdering slaves; that statute provides, that if any person shall thereafter wilfully, maliciously and deliberately, murder any slave within the State, such person, on conviction, shall suffer death without benefit of clergy. The indictment pursued the words of the sta-

tute, and concluded *contra formam statuti*, but was held to be insufficient. The Judge who delivered the opinion remarked, that the offence should have been charged in the indictment as at common law; and that all the essential parts of the common law indictment should have been pursued. So, in Fuller v. The State, [1 Blackf. Rep. 65,] it was held, that although a statute declare the constituents of murder, and prescribe the punishment substantially as at common law, though not in the words of the common law indictment for that offence, yet an indictment as at common law was sufficient. [See also Jerry v. The State, Id. 396, and 1 Virginia Cases 310; 6 Binn. Rep. 179.]

We will not stop to make a particular application of the law as laid down in the citations made to the case at bar, as we have several statutory provisions which are decisive of the question we are considering. By the 12th section of the 8th chapter of the act "regulating punishments under the penitentiary system," it is enacted, that " upon an indictment for any offence, consisting of different degrees, as prescribed by law, the jury may find the accused not guilty of the offence in the degree charged in the indictment, and may find him guilty of any degree of such offence inferior to that charged in the indictment, or of an attempt to commit such an offence; and whenever a person is indicted for an offence embracing one or more offences of a lesser character, if the guilt of the accused is not made out as charged, it shall be competent for the jury, if the proof authorizes it, to find the accused guilty of the lesser offence, whether a felony or a misdemeanor." Again, by the 26th section of the same chapter, " all indictments for offences inhibited by this code, which are offences at common law, shall be good, if the offence be charged or described according to the common law; and the party charged, on conviction, shall receive the punishment prescribed by this act, nor shall the words ' force and arms,' or ' contrary to the form of the statute,' be regarded as necessary in any indictment whatever, &c."

The offence of which the prisoner has been convicted, would at common law be either a homicide with malice implied, or it would be manslaughter; one or the other of these offences it would be, and nothing less; and on an indictment for murder in the usual form, it would have been competent to have convicted him of either of these offences according as the proof might warrant.

This being the case, the decisions we have cited show, that the indictment embraced both the grades of murder provided for by the fifth and sixth sections, and that the charge of the circuit judge was correct. But if the common law rule were otherwise, the sections of our statute cited from the eighth chapter, are perfectly conclusive to show, that the indictment is sufficient to sustain the conviction.

The jury could not have been misled by the charge of the court, informing them that they might find the prisoner guilty, under either the fifth or sixth section. At least such must be the inference from the bill of exceptions, which only professes to set out a part of the charge. We cannot infer that the court intended to decide for the jury the question of the prisoner's guilt; but must suppose in the posture in which the case is presented, that, that question was fairly referred to the jury. Nor can we understand that the judge intimated his opinion, that the prisoner was guilty under the fifth section; and if he did, the prisoner has not been prejudiced, if guilty under the sixth section.

It was the duty of the jury to try the prisoner according to the law and evidence, and he could not have been prejudiced by the remark, that the punishment for the offence denounced by the sixth section, was not less than two, nor more than ten years imprisonment in the penitentiary. The length of imprisonment could not change the grade of the offence, or the guides by which truth is discovered. The investigations of the jury should have been alike cautious and impartial, whether the imprisonment was one or twenty years.

Our conclusion is, that the judgment of the circuit court of Jackson, so far as referred to us for revision, is free from error; and it is consequently affirmed.

CLAY, J.—Not sitting.