## BOB (A SLAVE) vs. THE STATE.

[INDICTMENT AGAINST SLAVE FOR MURDER OF WHITE PERSON.]

1. *Assault and battery between slaves.*—Under the statutes of this State (Code, § 3317), an assault and battery committed by one slave on another is an offense.
2. *Involuntary manslaughter by slave.*—If a slave, in the unjustifiable attempt to commit an assault and battery on another slave, kill a white person by misadventure, he is guilty of involuntary manslaughter.—Code, § 3312.
3. *Form of indictment.*—Under an indictment for the murder of a white person, whether framed under the Code, or according to the common law, a slave cannot be convicted of involuntary manslaughter.
4. *Evidence of intent.*—If a slave kill a white person by a misdirected blow aimed at another slave, the intent with which he made the assault is a material inquiry in fixing the character of the homicide; and in determining this question, evidence of a previous quarrel and separation between the slaves, who had lived together as man and wife, is admissible against the prisoner.

Bob (a slave) v. The State.

FROM the Circuit Court of Barbour.
Tried before the Hon. E. W. PETTUS.

THE prisoner was indicted for the murder of Martha L. Vining, a white child between seven and eight years old, and was convicted. The substance of the testimony adduced on the trial, as set out in the bill of exceptions, may be thus stated : The deceased was much attached to a slave woman named Dinah, and frequently followed her out into the field where the latter worked; and on the morning of the homicide had gone with her into a field, some three hundred yards from the house, where Dinah was clearing up new ground, while the prisoner was employed in a field a few hundred yards distant making rails. According to the testimony of Dinah, who was examined as a witness on the trial, " the prisoner, about an hour and a half after sun-rise, came to the place where she and the deceased were, and told witness to hand him her axe, which she refused to do. The prisoner took hold of the axe, and he and witness had a scuffle for it; but the prisoner succeeded in wrenching it out of her hand, and turned and struck the deceased with it. Witness, deceased, and the prisoner, were then close together ; the prisoner being between the two. As soon as the prisoner struck the deceased, she fell, and struggled like one dying. Witness seized hold of the axe again, and succeeding in wresting it from the hand of the prisoner, who immediately drew a case knife, ground to a point, and rushed on her, and attempted to stab her with the knife. Witness caught hold of the knife, bent it nearly double, and finally got possession of it. She then begged the prisoner not to kill her, and to let her go to the branch for some water; and the prisoner led her to the branch, a few feet distant, holding her by the wrist. When starting to the branch, witness threw the axe behind her; and when they reached the water, the prisoner told her to drink if she wanted to, and loosened his hold. Witness then again begged for her life ; but the prisoner said, ' No, I came here to kill you and Lou ' (by which name the deceased was commonly called); ' I have killed her, and now I mean to kill you.' Witness asked him to let her try to bring the deceased to life, by washing her face and head in the branch; but he refused,

and repeated, that he had killed Lou, and would kill witness. Witness then started to run, and the prisoner ran after her, struck her, and jumped on her; and witness had no further recollection of what occurred, until about 12 o'clock, when she recovered her senses." On cross-examination, Dinah stated, " that it was possible the prisoner struck the deceased in wresting the axe from the hands of witness; that the prisoner was then between her and the deceased, and the axe, as it was wrested out of the hands of witness, was jerked around towards the deceased; that the deceased did not receive but one blow with the axe; that she would not be positive that the prisoner intended to strike the deceased with the axe, but it was her impression that, after wresting the axe from witness, he struck at the deceased with it."

The father of the deceased testified, " that he and his partner, who lived nearly a mile apart, had hired Dinah and the prisoner for the present and last years; that during the first of last year, the prisoner and Dinah lived together, at the house of witness, as man and wife. Witness was then about to state that said slaves, in August of last year, had quarreled and parted; when the prisoner objected to said evidence. The court overruled the objection, and the prisoner excepted. Witness then stated that, in August of last year, the prisoner and Dinah quarreled ; that the prisoner beat Dinah severely, and they then separated, and had not since lived together ; that he then gave the prisoner a whipping, and sent him to live at the house of his partner ; and that Dinah and the prisoner had not lived at the same house since that time."

The prisoner asked the court to charge the jury as follows:

"1. That an assault and battery by one slave on another is not an offense known to our laws; and therefore, if the blow with the axe was given by the prisoner, without intending to injure the deceased, but was given involuntarily while struggling with Dinah, then the jury cannot find the prisoner guilty."

"2. That if it appeared from the evidence that the prisoner was about to chastise Dinah, and in wresting the axe from her, it struck the deceased, and caused her death, without any intention on the part of the prisoner to injure the deceased,— then the prisoner cannot be found guilty."

The court refused these charges, and the prisoner excepted.

HILLIARD & THORINGTON, for the prisoner.—1. The evidence of the quarrel between Dinah and the prisoner, some twelve months before the killing, was irrelevant, was no part of the *res gestæ*, and ought not to have been received.—Skains & Lewis v. The State, 21 Ala. 218; The State v. Hill, N. C. Rep. 291.

2. An assault and battery by one slave upon another is not an offense known to our laws.—Code, § 3312; Reeve's Dom. Rel. 339; N. C. Rep. 214. If death ensue from an involuntary blow by a person not engaged in an unlawful act, he is guilty of no crime. The first charge asked, therefore, should have been given.

3. Under this indictment, the prisoner could not be convicted of involuntary manslaughter. If the offense be created by statute, the indictment must conform to the statute.— Skains & Lewis v. The State, 21 Ala. 218; 16 Geo. R. 200.

M. A. BALDWIN, Attorney-General, *contra.*—1. There is no analogy between this case and that of Skains & Lewis, 21 Ala. 218. That the evidence of the previous quarrel between the slaves was properly received, see Balaam v. The State, 17 Ala.

2. The correctness of the charges asked and refused, involves the question, whether section 3312 of the Code is merely declaratory of the common law, or creates the offenses therein enumerated. All the offenses mentioned in said section, except an assault with intent to kill any white person, are offenses known to the common law. That the statute is framed for the punishment of slaves, makes no difference, since the law, with regard to crimes committed by slaves, "pretermits for a moment the relation of master and slave, takes the slave out of the hands of his master, forgets his claims and rights of property, and treats the slave as a rational, intelligent being, responsible to moral, social and municipal duties and obligations."——Elijah v. The State, 1 Humph. 102. Although these offenses may be considered statutory, because the common-law punishment is increased; yet section 3601 renders it unnecessary that the indictment

should be framed under the statute, by declaring that, "upon indictments for any offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged, and guilty of any inferior degree."

3. That it is an offense against our statute law for one slave to commit an assault and battery on another, see section 3317 of the Code.

STONE, J.—The indictment in this case contains a single count for murder, which is framed according to the form given in the Code, p. 698, form No. 2. It wants many of the attributes of a common-law indictment.—See note to Arch. Crim. Pl. (by Waterman), vol. 2, pp. 206-11, *et seq.*

Under the common law, felonious homicide has different degrees of guilt—to-wit: murder, and manslaughter.—Bishop on Cr. Law, § 300. Murder is not always willful; neither is every willful killing, murder.—*Ib.* The same thing may be affirmed of manslaughter.—*Ib.*

Homicide *per infortunium* is felonious, if the killing occurred in the prosecution of an unlawful act. It is murder, if the unlawful act was a felony, although there may have been no intention to injure the deceased. If the unlawful act was simply a misdemeanor, the killing is only manslaughter.— Arch. Cr. Pl. (by Waterman), 2d vol., 216, and notes. This last class is defined as manslaughter in the second degree, under section 3085 of the Code.

The testimony of the witness Dinah, in the direct examination, tends to show that the act which caused the death in this case, was willful; and, so far as we can discover, if that be the case, the defendant is guilty of murder. On cross-examination, the same witness stated, " that it was possible the prisoner struck the deceased in wresting the axe from the hands of the witness ; that prisoner was then between witness and deceased, and the axe, as it was wrested out of the hands of witness, was jerked round towards deceased ; that deceased did not receive but one blow with the axe, and witness would not be positive that the prisoner intended to strike deceased with the axe, but that it was her impression that prisoner struck at deceased with the axe, after wresting the axe from witness."

The weight of this testimony, taken in connection with what the witness had previously said, if such previous statement be believed, we will not undertake to determine. If the inquiry was material, it was the right of the prisoner to have it weighed by the jury.—Ward v. The State, 28 Ala. 53; Partridge v. Forsyth, and Ala. & Tenn. Rivers Railroad Co. v. Kidd, at the present term.

It is contended, that the testimony drawn out on cross-examination tended to show that defendant was, at most, engaged in an attempt to commit an assault and battery on Dinah, a slave; and that the law knows no such offense. We can not assent to this proposition. One slave may commit an assault and battery on another slave.—Code, § 3317; Flanagan v. The State, 5 Ala. 477; Elijah v. The State, 1 Humph. 102.

We hold, that if a slave, in the attempt, unjustifiably, to commit an assault, or assault and battery, on another slave, kill a white person by misadventure, he is guilty of involuntary manslaughter, under section 3312 of the Code.

It is contended for the prosecution, that the inquiry, whether the prisoner was guilty of murder or involuntary manslaughter, was immaterial, and therefore the charges asked should not have been given. The Code (§§ 3504 and 3601) is referred to in support of this argument. Section 3504 can exert no influence on this case, because this indictment is framed according to the form given in the Code, and not according to the common law.

Section 3601 simply provides for "offenses consisting of different degrees." However murder and manslaughter, if committed by a white person, might be classed, they are not one " offense consisting of different degrees," when committed by a slave. The punishment of the latter offense has been materially changed and aggravated by the Code, and hence it must be regarded as a distinct statutory offense. See authorities cited in Flanagan v. The State, 5 Ala. 480; Chitty's Cr. Law, 290; Williams v. The State, 15 Ala. 263. Looking to the punishment as one of the tests of aggravation, it stands side by side with murder. This section, then, cannot aid the prosecution.

The decision in Nancy's case, 6 Ala. 483, is not intended

3

to be disturbed by this. In that case, the indictment charged more than the statute required ; to-wit, an intent to commit the crime of murder. The court regarded that averment as surplusage, and sustained the conviction. This was the entire decision, however the judge may have expressed himself. Under the statute, as it then existed, and now exists, no such offense was known, as an assault with intent to commit murder by a slave. The intention to kill a white person was found by the jury, and the requirements of the law were complied with.—See Stedman's case, 7 Por. 495.

We hold, then, that under an indictment charging the defendant with murder, he can not be convicted of involuntary manslaughter, whether the indictment be framed under the Code, or according to the common law. The reasons why he can not be convicted under the Code are shown above. He can not be convicted under a common-law indictment for murder, because in that case, the offense, *involuntary manslaughter*, is not "charged or described according to the common law." In criminal cases, we have no right to depart from the rules of the common law, to a greater extent than the statute authorizes.—Flanagan v. State, 5 Ala. 480.

The first charge asked was properly refused, because it erroneously assumed that a slave could not commit an assault and battery on another slave. The second charge should have been given, for the reasons stated above.

The evidence of a previous quarrel between the prisoner and Dinah was properly received. Whether, in the event the homicide was involuntary, the prisoner entertained the intent to murder Dinah, was a material inquiry, in defining the character of the offense actually committed. If the deceased came to her death by a misdirected blow aimed at Dinah, the homicide was murder, involuntary manslaughter, or excusable, as his intent was felonious, simply unlawful, or justifiable.—Case of Balaam, 17 Ala. 451; Johnson v. The State, *ib.* 618; Martin and Flinn v. The State, 28 Ala. 72.

The case of Skains & Lewis v. The State, 21 Ala. 218, was an indictment for an affray. Malice is not an ingredient in that offense. The cases are entirely dissimilar.

For the error pointed out, the judgment of the circuit

court is reversed, and the cause remanded.   Let the prisoner remain in custody, until discharged by due course of law.