HENRY (a slave) *vs.* THE STATE.

[INDICTMENT AGAINST SLAVE FOR HOMICIDE OF WHITE PERSON.]

1. *Joinder of offenses in indictment.*—In an indictment against a slave, for the homicide of a white person, the offense may be charged in different counts as murder and manslaughter.
2. *Sufficiency of indictment in description of offense.*—An indictment, charging that a slave "intentionally, but without malice," killed a white person, is not sufficient under the provisions of the Code: section 3516, dispensing with the averment of "presumptions of law," does not dispense with the necessity of averring that the killing was unlawful.
3. *Practice in trying issue on plea of former conviction or acquittal.*—When a former conviction or acquittal and not guilty are pleaded in a criminal case, the former issue must be disposed of before the latter is put to the jury.
4. *Conviction of less offense than charged in indictment.*—Under an indictment charging a slave with the murder of a white person, a conviction may be had for voluntary manslaughter. (STONE, J., *dissenting.*) (Overruling *Bob v. The State*, 29 Ala. 20.)
5. *Form and sufficiency of plea of former acquittal or conviction.*—In a plea averring a former conviction or acquittal, the former indictment must be set out in full, and the conviction or acquittal under it; and there must be an averment of the identity of the prisoner, and of the offense charged in the two indictments.

Henry (a slave) v. The State.

6. *Arrest of judgment on former conviction.*—A replication to a plea of *autre fois convict*, in these words, " arrest of judgment," is fatally defective on demurrer : the replication ought to show that the former indictment was insufficient, or that a conviction could not lawfully have been had under it for the offense charged in the second.

7. *Error without injury in action of court on pleadings.*—Where two special pleas in bar, both substantially the same, and both defective, are interposed by the defendant in a criminal case, and issue is taken on one of them, the failure of the court to require the State to demur, reply, or take issue on the other, is not available to the defendant on error.

8. *Personal presence of prisoner in court.*—In capital cases, it is the safer practice to have the prisoner personally present in court, when the day for his trial is set, and when the order for summoning the jury is made.

APPEAL from the Circuit Court of Dallas, on change of venue from Wilcox.

Tried before the Hon. NAT. COOK.

THE indictment in this case was in these words :

" The grand jury of said county charge, that, before the finding of this indictment, Henry, a negro man slave, unlawfully, and with malice aforesaid, killed James Griffith, a white person, by stabbing or cutting him with a knife, against the peace and dignity of the State of Alabama.

" The grand jury further charge, that, before the finding of this indictment, Henry, a negro man slave, unlawfully and intentionally, but without malice, killed James Griffith, a white person, by stabbing him with a knife, against the peace and dignity of the State of Alabama.

" The grand jury further charge, that, before the finding of this indictment, Henry, a negro man slave, intentionally, but without malice, killed James Griffith, a white person, by cutting him with a knife, against the peace and dignity of the State of Alabama."

A *nolle-prosequi* having been entered as to the first count, the prisoner then demurred to the whole indictment, and to the second and third counts separately ; and the demurrers having been overruled, he filed nine pleas, which were as follows :

" 1. That the State of Alabama ought not further to prosecute said indictment against him, because he saith that, heretofore, to-wit, at the spring term of the circuit

court of Camden, in and for the county of Wilcox, in the year 1858, he, the said Henry, was lawfully acquitted of said offense charged in said indictment; and this he is ready to verify," &c.

"2. That the State ought not further to prosecute said indictment against him, because he saith that, heretofore, to-wit, at the spring term of the circuit court of Wilcox county, held in and for said county, in the year 1858, at the court-house thereof, he, the said Henry, was lawfully convicted of the offense charged in said indictment; and this he is ready to verify," &c.

"3. That the State ought not further to prosecute said indictment against him, because he saith, that at the fall term of the circuit court held in and for the said county of Wilcox, on the second Monday after the fourth Monday of September, 1857, the grand jury then and there empanneled, sworn and charged to inquire for the body of said county, presented against him, the said Henry, a bill of indictment in the words and figures following," &c. (setting out the indictment.)  "And the said defendant saith, that the offense charged in said former indictment, in fact, is the identical offense with which he is charged in this indictment, and not another or a different offense; and that the parties to said former indictment are the identical parties to this indictment, and not other or different parties; that at the spring term, 1858, of the circuit court held in and for said county of Wilcox, he, the said Henry, was arraigned and charged upon said former bill of indictment, and thereto pleaded not guilty; that at said last named term of said circuit court, he, the said Henry, was put upon his trial on said former indictment, and a jury of twelve good and lawful men were then and there empanneled and sworn well and truly to try the issue joined between the State of Alabama and him, the said Henry, on said former indictment, and the solicitor for the State then and there examined witnesses touching the facts charged in said former indictment; and that the said jury then and there returned as their verdict the following words: 'We, the jury, find the defendant guilty of voluntary manslaughter, as charged

in the indictment.' And the said Henry further saith, that at said last named term of said circuit court of Wilcox county, when said jury so returned said verdict, the said court then and there discharged said jury, without the consent of him, the said Henry, and without any necessity therefor. And this the said defendant is ready to verify," &c.

4. Not guilty, in manner and form as charged, &c.

"5. That the State ought not further to prosecute said indictment against him, because he saith, that heretofore, to-wit, at the spring term of said circuit court of Wilcox county, 1858, he, the said defendant, was lawfully acquitted of the offense charged in said indictment; and this he is ready to verify."

"6. That the State ought not further to prosecute said indictment against him, because he saith, that at the spring term of the circuit court of Wilcox county, begun and held on the second Monday after the fourth Monday in March, 1858, he, the said defendant, was lawfully acquitted of the offense charged in the said second count of said indictment; and this he is ready to verify."

"7. That the State ought not further to prosecute said indictment against him, because he saith, that at the spring term of the circuit court of Wilcox, 1858, he, the said defendant, was lawfully acquitted of the offense charged in the first count of said indictment; and this he is ready to verify."

"8. That the State ought not further to prosecute said indictment against him, because he saith, that at the spring term of the circuit court of Wilcox county, 1858, he, the said defendant, was lawfully acquitted of the offense charged in the first count of said indictment; and this he is ready to verify."

"9. That the State ought not further to prosecute said indictment against him, because he saith, that at the fall term of said circuit court of Wilcox county, held in and for said county on the second Monday after the fourth Monday of September, 1857, the grand jury then and there empanneled, sworn and charged to inquire for the body of said county, presented against him, the said

defendant, a bill of indictment in the words and figures following," &c. (setting it out.) "And the said defendant saith, that the killing with which he was charged in said former indictment, is the identical killing with which he is charged in this indictment, and not another or a different killing; and that the parties to said former indictment, are the identical parties to this indictment, and not other or different parties. And said defendant further saith, that at the spring term of the said circuit court of Wilcox county, he, the said defendant, was arraigned and charged upon said former bill of indictment, and thereto pleaded not guilty; that at said last named term of said circuit court of Wilcox county, he, the said defendant, was put upon his trial on said former bill of indictment, and a jury of twelve good and lawful men were then and there empanneled and sworn well and truly to try the issue joined between the State of Alabama and him, the said Henry, on said former indictment; that the solicitor for the State then and there examined witnesses touching the facts charged in said former indictment, and the said jury then and there returned as their verdict the following words : 'We, the jury, find the defendant guilty of voluntary manslaughter, as charged in the indictment.' And said defendant further saith, that at said last named term of said circuit court of Wilcox county, when said jury so returned said verdict, the said court then and there discharged said jury, without the consent of him, the said Henry, and without any necessity therefor. And this the defendant is ready to verify."

The indictment referred to in the third and ninth pleas, as therein set out, charged that the defendant, "unlawfully, and with malice aforethought, killed James Griffith, a white person, by stabbing him with a knife."

The State took issue on the first, fourth, and seventh pleas; demurred to the third, sixth, eighth and ninth; and replied to the second, "arrest of judgment." The court sustained the demurrer to the third, sixth, eighth and ninth pleas, and overruled a demurrer to the replication to the second plea; and issue was then joined on said replication.

26

When the case was called for trial, as appears from the bill of exceptions, the prisoner moved the court to quash the *venire*, and also objected to being tried at that term of the court, "because he was not in court, but was confined in jail, until the case was called for trial; and because the order of court setting a day for his trial, and directing a jury to be summoned for his trial, was made in his absence, without his consent, and whilst he was confined in jail." The court overruled each motion, and the prisoner excepted.

E. W. PETTUS, for the prisoner, made these points:

1. The demurrer to the whole indictment should have been sustained, because there was a misjoinder of counts. A slave cannot be charged, in different counts of the same indictment, with the murder and voluntary manslaughter of a white person. This indictment being framed under the Code, the rules applicable to indictments at common law do not apply; nor does section 3506 of the Code. Bob v. The State, 29 Ala. 20; Lewis v. The State, 30 Ala. 54.

2. The demurrer to the third count should have been sustained, because that count did not allege that the killing was unlawful or felonious. The prisoner may have killed the deceased, as charged in this count, in self-defense. An intentional killing is not necessarily a crime. According to the rules of evidence, an intentional killing of a human being, unexplained, would be murder; but no such presumptions can be allowed in pleading. 1 Bishop on Criminal Law, § 300; Code, § 3515. "Manslaughter is the *unlawful* and felonious killing of another, without malice."—Wharton's Amer. Crim. Law, (3d ed.) 423; Roscoe's Crim. Ev. 626; Bob v. The State, 29 Ala. 20; Wharton's Prec. 82, 83, 84, 85; Archb. Crim. Pl. 229; Code, p. 698, 3d form. If the use of the word *unlawful* be not absolutely essential to the validity of an indictment for manslaughter, some other word must surely be used to show that the killing was unlawful. At common law, the charge was, that the prisoner "feloniously did kill and slay."—2 Archb. 254. In an indict-

ment for murder, the words, "with malice aforethought,"
necessarily mean that the killing was unlawful; and, at
common law, the word "feloniously" meant *unlawfully.*
Section 3516 of the Code, if it applies to this question, is
directly in opposition to the preceding section, and in
conflict with the constitutional provision which secures
to the accused, in criminal cases, a right "to demand
the nature and cause of the accusation, and have a copy
thereof."

3. The judgment must be reversed, because the issues
joined on the pleas of not guilty, former conviction, and
former acquittal, were all submitted to the jury at one
and the same time.—Nelson v. The State, 7 Ala. 610;
Leach's Crown Law, 138.

4. It was irregular to proceed to the trial of the pris-
oner, without requiring the State to demur, reply, or take
issue on his fifth plea.

5. The prisoner had a right to be personally present in
court, when the day for his trial was set, and the *venire*
ordered; and this right could not be waived by the pris-
oner himself, much less by his attorney. He claimed
this right so soon as he had an opportunity, and objected
to being tried at that time because of his absence when
those orders were made; and it was erroneous to force
him to trial against his objection.—Prine v. Common-
wealth, 6 Har. (Penn. St.) R. 103; Hamilton v. Common-
wealth, 4 Har. (Pennsylvania State) R. 129; Dunn v.
Commonwealth, 6 Barr, 384; Hooker v. Commonwealth,
13 Grattan, 763. The accused has a constitutional right,
which extends to slaves, to be heard by himself and
counsel.

6. The demurrer to the third and ninth pleas should
have been overruled.—Mahala v. The State, 10 Yerger,
235; Ned v. The State, 7 Porter, 187; McCauley v. The
State, 26 Ala. 135.

7. To show that it was unnecessary, in the pleas of
former conviction and former acquittal, to set out the
record of the former prosecution, see Archb. Pl. 112–14;
Code, § 2520.

M. A. BALDWIN, Attorney-General, *contra.*—1. The first and second counts of the indictment are in strict compliance with the forms of indictments found in the Code. The third count is like the second, except that it omits the word *unlawfully.* Voluntary manslaughter, for which the prisoner was indicted, is a common-law offense, and is defined to be the unlawful killing of another without malice.—Waterman's Archb. 225. Where the crime existed at common law, the use of the term *unlawful* is unnecessary.—Waterman's Archb. 92, note ; Hawk. P. C. 25 ; Bacon's Abr., *Indictment,* G, 1 ; Jerry v. The State, 1 Blackf. 396 ; The State v. Bray, 1 Missouri, 180. The law presumes every killing to be unlawful.—Commonwealth v. York, 9 Metcalf, 93 ; Woodsides v. The State, 2 How. (Miss.) 265 ; 2 Grattan, 594 ; 2 Russ. on Cr. 731 ; Code, §§ 3501, 3516.

2. The demurrers to the third, sixth, eighth and ninth pleas, were properly sustained. The third and ninth pleas, in form and effect, are pleas of former conviction, and aver a conviction of voluntary manslaughter of a white person under an indictment for murder ; which can not be done.—Bob v. The State, 29 Ala. 20. The sixth and eighth pleas are bad, in form and substance, because they do not show in what manner the prisoner had been put in jeopardy.—1 Chitty's Cr. L. 461–62 ; Atkins v. The State, 10 Ark. 558.

3. The replication to the second plea was sufficient, and the demurrer to it was properly overruled.—1 Stew. 31 ; Cobia v. The State, 16 Ala. 781.

4. The first and seventh pleas, on which issue was taken by the State, and on which no action appears to have been had, threw the *onus probandi* on the prisoner. Waterman's Archb. 91. As no action appears to have been taken on them, they are presumed to have been waived by him.—McCollum v. Hogan, 1 Ala. 515 ; Crow v. Decatur Bank, 5 Ala. 249 ; Dougherty v. Colquitt, 2 Ala. 337.

5. The personal presence of the prisoner in court is only necessary at his arraignment, trial, when the verdict is received, when sentence is passed, and on motion in arrest

of judgment.—Dan v. Commonwealth, 6 Barr, 384; Hook-
er v. Commonwealth, 13 Grattan, 763; 9 Leigh, 624;
1 Chitty's Criminal Law, 411, 414.

R. W. WALKER, J.—The rule is well settled, that
several distinct felonies, of the same general nature, may
well be charged in separate counts of the same indictment.
Johnson v. The State, 29 Ala. 65, and cases cited; Com-
monwealth v. Hill, 10 Cushing, 530; Sarah v. The State,
28 Miss. 267. There was no error, therefore, in overrul-
ing the demurrer to the entire indictment.

2. The Code provides, that the indictment "must con-
tain a statement of the facts constituting the offense;"
and that "the act charged must be stated with such cer-
tainty as to enable the court to pronounce judgment upon
a conviction."—Code, §§ 3501, 3515. Indeed, it would
not be in the power of the legislature to provide that it
should contain less. Our organic law has declared, that
in all criminal prosecutions, the accused has a right to
demand "the nature and cause of the accusation, and
have a copy thereof." He cannot be said to be informed
of the nature and cause of the accusation, unless the
indictment, under which he is arraigned, sets forth the
facts constituting the offense with such certainty, and so
fully identifies the accusation, that the accused and the
court may know that the offense for which he is put upon
his trial is the offense for which he is indicted, and that
the court will be able to give the appropriate judgment
on conviction.—Noles v. State, 24 Ala. 692; Murphy v.
State, 24 Miss. 590; 2 Archb. 202, n. 1. The facts which
constitute the offense of manslaughter are, that the
accused has killed a human being, that the killing was
unlawful, and that it was without malice.—Wharton Cr.
Law, § 932. That the killing was unlawful is as much a
fact, as that human life has been taken. It is as essential
a constituent of the offense as the killing itself, and must
be averred in the indictment, either by express allegation,
or by the use of terms, or the statement of facts, which
conclusively imply it. The fact that one person has
intentionally, but without malice, killed another, does not

necessarily import a crime.—1 Bishop's Cr. Law, § 300. All the facts charged in the third count may be true, and yet the defendant be wholly innocent. It would be monstrous to hold the indictment good, when the supposition of the defendant's innocence is consistent with every fact stated in it. "It would not be competent for the legislature to make that an indictment, which failed to accuse a party of a crime."—Noles v. State, 24 Ala. 692.

Section 3516 of the Code, when properly construed, is not in conflict with the principles here stated. That section provides, that "neither presumptions of law, nor matters of which judicial notice is taken, need be stated in the indictment." It has been urged in the argument, that it is not necessary, under this section, where the fact of killing is alleged, to superadd the charge that it was unlawful, for the presumption of law assigns to it that character. If this be a sound construction of this statute, it would follow that, in an indictment for murder, it would be unnecessary to allege that the killing was with malice aforethought; because, the fact of killing being shown, the law presumes it to have been upon malice, until the contrary appears.—2 Russell on Crimes, 231; Commonwealth v. York, 9 Metc. 93. We should thus be forced to hold, that an indictment, which simply charged that "A. B. killed C. D. by shooting him with a pistol," was a good indictment for murder. From this it would result, that the same brief and comprehensive form would answer for all the kinds of homicide, and that there need be no distinction between an indictment for murder and one for manslaughter. But we have seen that, both by constitutional requirement and legislative provision, "the act must be stated with such certainty as to enable the court to pronounce judgment upon a conviction." If a defendant were tried under the brief form just supposed, and a general verdict of guilty were rendered by the jury, what judgment would or could the court pronounce? Of what offense would the defendant be convicted—murder, voluntary manslaughter, or involuntary manslaughter?

We think that section 3516 was not designed to apply to legal presumptions, such as those we have mentioned.

To make that section harmonize with sections 3501 and 3515, and with the declaration of rights securing to the accused information of "the nature and cause of the accusation," we must hold, that it refers not to those disputable presumptions which may be overcome by opposing proof, but to those conclusive presumptions of law which forbid all further inquiry, and allow of no proof that the fact is otherwise. An allegation that the defendant deliberately published slanderous words, which he knew to be false, would, under section 3516, be a sufficient allegation that the publication was malicious; for, from the facts alleged, the law conclusively presumes that such was the case.—Burrill, 46-7. On the other hand, the presumption that the possession of personal property, lately stolen, is a guilty possession, is a disputable presumption, which only holds good until disproved. An indictment, which merely charged that certain property had been stolen, and that very shortly thereafter the defendant was found in possession of it, could not be considered as importing a charge of larceny; and yet it would be, if section 3516 can be considered as applying to any presumptions of law, except those which are termed conclusive. That section may also have been designed to dispense with the statement of those absolute conclusions of law founded upon certain given facts. For example, where it is alleged that the defendant, with malice aforethought, killed a human being, it is a conclusion of law that he murdered him; and under section 3516, the statement of this conclusion is unnecessary.

The 3d count was insufficient, and the demurrer to it ought to have been sustained.

3. Where a defendant pleads *autrefois acquit*, or *autrefois convict*, and not guilty, both issues ought not to be put to the jury at the same time. To do so "would lead to the absurdity that the jury would be obliged to find on both; and yet, if their first finding was for the prisoner, they could not go on to the second, because the first finding would be a bar. They are distinct issues, and the jury must be separately charged with them." Until the issue upon the plea of former acquittal, or former

conviction, is disposed of, there can be no trial in chief.
State v. Nelson, 7 Ala. 610; Leach's Cr. L. 138; 1 Russ.
Cr. 837, note. If the defendant consents that all these
issues may be submitted at the same time, or if he suffers
this to be done without objection, it may be, that he
could not complain of the irregularity on appeal. Upon
that question we express no opinion. We simply mean
to indicate what is the correct practice, in cases where
these pleas are interposed.

4. The rule has always been, that a person indicted for
one felony could be convicted of another felony legally
included in the one charged.—2 Leading Cr. Cases, 137,
457, 462, 560, and authorities cited. This rule of the
common law has been recognized and extended by our
statute. For whereas, at common law, if the defendant
was charged with a felony, he could not be convicted of a
misdemeanor, although the latter might be legally includ-
ed in the former; under our statute, the defendant may
be convicted of any offense, whether felony or misde-
meanor, which is included in that for which he stands
indicted.—Code, § 3601. The most common illustration
of the common-law rule just adverted to, was the practice
of convicting of manslaughter on a charge of murder.
Indeed, it has been an established principle of law for
centuries, that murder necessarily includes manslaughter.
Rex v. Mackalley, 9 Coke, 67 (b.) This results from the
essential nature of the two offenses, and is not by any
means a consequence of the fact that the punishment vis-
ited by the common law upon one was more serious than
that inflicted upon the other. Murder embraces all the
constituents of manslaughter, with other elements of
criminality superadded. The person guilty of murder is
guilty of every thing necessary to constitute manslaughter,
and of something besides. It seems to be a proposition
which is demonstrated by its statement, that the murder
of a white person by a slave necessarily includes the man-
slaughter of a white person by a slave, just as the major
proposition in logic includes the minor, or as the whole
of a physical substance includes its component parts.
When a slave is charged with the murder of a white per-

Henry (a slave) v. The State.

son, and the proof makes out a case of manslaughter, the most that can be said is, that he is not guilty of part of the offense charged, but is guilty of the residue. And it never was required that the proof must sustain every averment of the indictment, in order to justify a conviction under it; but, if so much of the charge is proved as amounted to an offense punishable by law, the defendant might be convicted of such offense.—2 Leading Criminal Cases, 137.

In the recent case of Bob v. The State, 29 Ala. 20, it was held, that under an indictment for the murder of a white person, a slave cannot be convicted of involuntary manslaughter. If this case be a correct exposition of the law, it necessarily follows, that under such an indictment, a slave could not be convicted of voluntary manslaughter. All the reasons which are urged as applying in the one case, exist in full force in the other. In that case it seems to have been considered, that because the punishment of manslaughter, when committed by a slave upon a white person, had been increased by statute, and made the same as the punishment denounced against murder, it must therefore be regarded as a distinct statutory offense, and as no longer included in murder. The fact that the punishment has been aggravated, certainly does not alter the nature of the offense, or change the elements which compose it, but simply modifies the consequences resulting from its commission. Notwithstanding the increased punishment to which it is subjected, it still remains, as before, an offense all of the constituent parts of which are necessarily included in murder; and it comes, therefore, within the very letter of the latter clause of section 3601 of the Code, which provides that " the defendant may be found guilty of any offense the commission of which is necessarily included in that with which he is charged, whether it be a felony or misdemeanor."

In the State v. Waters, 39 Maine R. 54, under a statute which provided that assaults with intent to murder, kill, maim, rob, &c., should be punishable with imprisonment in the penitentiary for not more than twenty years, it was held, that if the defendant be indicted for an assault with

intent to murder, he may convicted of an assault with intent to kill; and this upon the principle, that the former offense necessarily included the latter, although both were punishable alike. It seems impossible to doubt the correctness of this decision.

The decision in Bob v. The State, *supra*, is in direct conflict with the previous case of Stephen v. The State, 15 Ala. 534, which is not noticed in the opinion, and in which it was held, that under an indictment for the murder of a white person, a slave could be convicted of voluntary manslaughter. When the case last referred to was decided, the statutes defining and regulating the punishment of these various offenses, when committed by slaves, were identical with the provisions of the Code on the same subject.—Clay's Digest, 472, § 2; *ib*. 413, §§ 3 and 4; *ib*. 439, § 12; Code, §§ 3312, 3084–5, 3601.

A conclusive test of the correctness of the principle asserted in Bob v. The State, *supra*, is afforded by supposing that a slave is indicted for the manslaughter (either voluntary or involuntary) of a white person, and that on the trial the proof makes out a case of murder. If the rule adopted in that case is a sound one, the defendant could not be convicted on such proof, because the theory of which that rule is the result is, that the two offenses are essentially distinct and different, and that the manslaughter of a white person by a slave is not included in murder. He would be a bold judge, who, in the case supposed, would hold that the defendant was entitled to an acquittal, because the State had proved too much. And yet the only ground on which his conviction could be justified, would be that the offense proved necessarily included the one charged. Mr. Bishop suggests, as a definition of manslaughter, "the unlawful act which results in the death of a human being;" and adds, "In this definition murder is also included; and properly so, because an indictment for manslaughter may be sustained while the proof is of murder."—2 Bishop's Criminal Law, § 659.

After a careful consideration of the question, we are forced to the conclusion, that the ruling of the court upon

this point in the case of Bob v. The State, *supra*, is unsound in principle, and not reconcilable with the true intent and meaning of section 3601 of the Code. And inasmuch as that decision may be productive of serious inconvenience in practice, we feel constrained to express our dissent from it, and our adherence to the rule as settled in Stephen v. The State, 15 Ala. 534. The following authorities, and many others which might be cited, fully sustain the views here expressed: State v. Standefer, 5 Porter, 523; State v. Peter, 1 Stew. 38; Nancy v. The State, 6 Ala. 483; Burns v. The State, 8 Ala. 313; Flanagan v. The State, 5 Ala. 477; Stephen v. The State, *supra*; Dinkey v. Commonwealth, 5 Harris, 126; People v. McGowen, 17 Wend. 386; Commonwealth v. Griffin, 21 Pick. 523; Commonwealth v. Kneeland, 20 Pick. 206; Reynolds v. State, 1 Geo. 227; Johnson v. State, 14 Geo. 55; Slaughter v. State, 6 Humph. 410; People v. Jackson, 3 Hill, 92; King v. State, 5 Howard, 730; Sarah v. State, 28 Miss. 267; Brennan v. People, 12 Ill. 511; Commonwealth v. Drum, 19 Pick. 479; 1 Bishop's Criminal Law, §§ 531, 538.

Under an indictment which charges ' a slave ' with the murder of ' a white person,' the defendant may be convicted of voluntary manslaughter; and if so convicted, and the judgment is arrested without his consent, he can not be held to answer a second indictment for the offense of which he has been once lawfully convicted. If, however, the judgment was arrested at his instance, he may be again tried under a new indictment, charging him with the offense of which he was found guilty.—State v. Phil, 1 Stew. 31; McCauley v. State, 26 Ala. 139; Slaughter v. State, 6 Humph. 410; 2 Leading Cr. Cas. 554; 1 Bishop's Criminal Law, § 673.

5. The pleas of *autre fois acquit* and *autre fois convict* consist partly of matters of record, and partly of matters of fact. They must set forth the former indictment, and the acquittal or conviction under it; and it seems to be essential that the record thereof, or at least of the indictment, should be set out in full. They must also aver the identity of the defendant with the person formerly acquit-

ted or convicted, and the identity of the offense charged in the first with that set forth in the last indictment. 1 Russ. Crimes, 837, note; 1 Chitty's Criminal Law, 459; Wharton's Cr. Law, § 558; 2 Hale's P. C. 241; 2 Leading Cr. Cas. 560; McQuoid v. The People, 3 Gilm. 76; Atkins v. The State, 16 Ark. 568; United States v. Shoemaker, 2 McLean, 120; Wortham v. Commonwealth, 5 Randolph, 669; Rex v. Wildey, 1 M. & S. 128; Warton's Precedents, 658.

Section 3520 of the Code, even if it can be considered as applicable to any part of the pleadings in criminal cases except the indictment, does not modify the rules just stated as to the essential constituents of these pleas. That section simply provides, that where a judgment is pleaded, it is not necessary to state the facts conferring jurisdiction on the court which rendered it; and makes the allegation, that the judgment 'was duly rendered,' a substitute for the statement of the jurisdictional facts. It does not dispense with the necessity of setting out the record of a former indictment in any case, where, at the common law, it was essential to do so. Tested by the rules here laid down, the 6th and 8th pleas were insufficient, and the demurrers to them were properly sustained.

6. The 2d plea of the defendant was open to the same objections on account of which we have just held the 6th and 8th defective. But, instead of demurring to it, the State interposed a replication in these words, "Arrest of judgment." If it had been shown that the indictment, under which the former conviction took place, was insufficient; or that under it the defendant could not have been lawfully convicted of the offense charged in this one, the fact that the judgment in the former case had been arrested, though without the consent of the defendant, would have been no defense to this prosecution.—State v. Phil, 1 Stew. 31; 2 Leading Criminal Cases, 554. But the replication contains no such allegation. For aught that appears, the former conviction may have been upon an indictment which justified it, and the judgment may have been arrested without the prisoner's consent. Under such circumstances, the arrest of judgment would

have been an unauthorized proceeding, and the defendant could not be held to answer a second indictment for the same offense. The demurrer to this replication should have been sustained.

7. There is no substantial difference between the 1st plea, on which issue was taken, and the 5th plea. These pleas were both defective, for the reasons stated in considering the 6th and 8th. Even if the record did not authorize the presumption that the defendant had waived the 5th plea; yet, inasmuch as it was defective, and as he had the benefit of it under another plea substantially identical with it, we cannot hold that he has sustained any legal injury by reason of the failure of the court to require the State either to demur, reply, or take issue upon it.

8. The record shows that the defendant was not present in person when a day was set for the trial of the case, and when the court made the order for summoning the jury. Whether this would work a reversal of the judgment, is a question we need not decide. It is certainly the safer practice to have the defendant, in a capital case, in court whenever such an order is made.—See the authorities on this subject collected in 2 Leading Crim. Cases, 451, *et seq.* ; see, also, State v. Hughes, 2 Ala. Rep. 102; Hooker v. Commonwealth, 13 Grattan, 763; 1 Chitty's Cr. L. 411, 414, 487.

The other questions presented by the record may not arise upon a future trial of the case. What we have said will be a sufficient guide for the court below in conducting further proceedings against the defendant.

The judgment is reversed, and the cause remanded. Let the prisoner remain in custody, until discharged by due course of law.

STONE, J.—Section 3312 of the Code declares, that " every slave who is guilty of murder, or of assault with intent to kill any white person, or who is guilty of the voluntary manslaughter of a white person, or the involuntary manslaughter of a white person in the commis-

sion of an unlawful act, must, on conviction, suffer death."

It is manifest that each of the offenses enumerated in the section above copied, except the first, has been raised in magnitude by the statute. Assault with intent to kill was, at common law, only a misdemeanor; and manslaughter, though a felony, was much less heinous than murder. The ingredients which raise assaults with intent to kill, and manslaughters, to the rank of capital felonies, are, that the perpetrator shall be a slave, and the slain a white person. These ingredients, as I understand the rule, constitute these offenses statutory. They must be proceeded against under the statute, and a common-law form of indictment will not justify a trial and conviction under the statute. In fact, as I conceive, no conviction of a slave could be had, under an indictment found as at common law, for the offenses committed on white persons, manslaughter, or assault with intent to kill.—Nelson v. The State, 6 Ala. 394; Flanagan v. The State, 5 Ala. 477; Williams v. The State, 15 Ala. 259; Ham v. The State, 17 Ala. 188; Murray v. The State, 18 Ala. 727; Turnipseed v. The State, 6 Ala. 664; Eubanks v. The State, 17 Ala. 181; Beasley v. The State, 18 Ala. 535.

Section 3506 of the Code provides, that "when the offenses are of the same character, and subject to the same punishment, the defendant may be charged with the commission of either in the same count in the alternative." The offenses of murder, and of assault with intent to kill, and manslaughter, either voluntary or involuntary, when committed by a slave on a white person, are of the same character, and subject to the same punishment. These several offenses may, then, be charged in the alternative in one and the same count. No one, I apprehend, would controvert this proposition. If these offenses, when committed by a slave on a white person, are statutory offenses, are of the same character, and subject to the same punishment, I cannot well conceive how the first of the offenses includes each of the others.

Another difficulty: Section 3312, so far as it declares the punishment of murder when committed by a slave,

applies alike to the murder of a slave and a white person. For a murder committed on a white person or a slave, the slave perpetrator must suffer death. Here the analogy ceases. The other offenses which are made capital by section 3312 of the Code, are limited in their operation to slave perpetrators on white subjects. For manslaughter, or other less offense, committed by one slave upon another, the punishment is much lighter, and in many cases before a different jurisdiction.—Code, §§ 3314, 3316, 3317. When a slave is indicted for murder, under section 3312 of the Code, it would seem unnecessary to aver the status of the deceased—whether a white person, or a slave, or free person of color. In either case, the punishment is alike capital. This being the case, how can the rule of my brothers be made to operate? If the person slain be a white person, then the charge of murder, according to their view, will include within it the other statutory, capital felonies enumerated in section 3312 of the Code. On the other hand, if the person slain be a person of color, and if the doctrine of inclusion be applied, it will take in the whole range of offenses to the person, less than murder, embracing manslaughter, mayhem, assault with intent to commit murder, and assault and battery. It was evidently contemplated by the legislature, that all offenses, less than murder, committed by slaves on slaves, might and should be brought to a more speedy trial than the circuit courts afford.—See Code, §§ 3316, 3317. Still, it would not be safe to affirm, that these sections take away from the circuit courts all jurisdiction of the offenses therein enumerated. Probably sections 3316 and 3317 furnish only an additional tribunal for the trial of slaves.

The construction of my brothers will, according to my apprehension, lead to most embarrassing results. Under their view, as I understand it, we will be forced to hold, that murder, when imputed to a slave, is a *propositus,* with two distinct and dissimilar lines of descent; the one embracing two capital felonies, while the other includes all the grades of offense less than murder, from manslaughter down to the insignificant misdemeanor of an assault and battery, by one slave upon another.

I think the rule of inclusion applies, when the slayer and the slain are both persons of color. This would present a clear case of an "offense, consisting of different degrees."—Code, §§ 3601, 3312, 3314, 3316, 3317. I can not well perceive how the crime of murder can also be made to embrace another class of offenses, which are punished with severity equal to that inflicted on the crime of murder itself.

I have felt it my duty to say this much in defense of the decision in the case of Bob v. The State, 29 Ala. 20. Both that case and this, so far as this question is concerned, probably do no more than settle a rule of practice. It is not very important, in what manner the rule is declared. Settled either way, it can be conformed to without inconvenience to the profession, or detriment to public justice.