# NALL *vs.* THE STATE.

[INDICTMENT AGAINST SHERIFF FOR NEGLIGENT ESCAPE.]

1. *What constitutes negligent escape.*—If a sheriff discharges the duties of his office so negligently that, in consequence of such negligence, a prisoner leaves the jail, and walks out into the surrounding town, though for a few minutes only, this constitutes an escape, even if it be shown that the prisoner actually returned.

2. *Variance.*—Under an indictment against a sheriff for a negligent escape, a conviction may be had on proof of a voluntary escape, because the latter necessarily includes the former.

3. *Authority of agent.*—A sheriff's instructions to his jailor, to obey the orders of his deputy as his own, must be considered as including and referring to such orders only as are legal, proper, and customary.

4. *Criminal responsibility of principal for act of agent.*—As a general rule, the principal is not responsible *criminaliter* for the illegal act of his agent, unless done by his express authority; nor are the declarations of the agent, in the performance of such illegal act, competent evidence against the principal when sought to be charged in a criminal proceeding.

FROM the Circuit Court of Pike.

Tried before the Hon. ROBERT DOUGHERTY.

THE indictment in this case contained but a single count, and charged that the defendant, who was then the jailor of said county, " negligently suffered one Daniel W. McKay, in his custody, charged with murder, to escape." The defendant pleaded not guilty, and issue was thereon joined. " On the trial," as the bill of exceptions states, " the State offered as a witness one Henegan, who, by appointment of the defendant, then the sheriff · of said county, was jailor during the year 1856, and who testified, that one Daniel W. McKay, charged with murder, was one of the prisoners in the jail of said county in January, 1856, when witness entered on the duties of his office as jailor; that said prisoner was allowed to go out into the jail-yard, and sometimes into the town of Troy, and about the streets of said town; that he was not confined in the dungeon, or felons' room, but sometimes in the debtors' room, sometimes in the passage, and sometimes he went

about the town as stated; that witness charged and received pay for the board of said McKay as a prisoner during the whole time; that said McKay, while thus allowed to go out into the jail-yard, was nevertheless a prisoner, and always returned to the jail, and was always forthcoming at court when his case was called; that it was his (witness') best recollection, although very indistinct, that defendant had told him that said McKay was not in his (witness') custody; that on one occasion, when another prisoner's term of confinement had expired, and one Marius Thompson, who was defendant's deputy, directed witness to discharge him, while witness insisted on instructions to that effect from defendant himself, the defendant instructed him to obey the orders of his deputies as his own; that, in consequence of these instructions, witness was in the habit of yielding obedience to the orders of said deputies; that said Thompson told witness not to confine said McKay in the dungeon, but to give him the liberty of going out as above stated; and that such liberty was allowed said McKay in consequence of these instructions. The defendant objected to the evidence in relation to the instructions of said Thompson, because he was not criminally responsible for the acts of his deputies, and because said Thompson himself was a competent witness for the State. But the court overruled both of these objections, and admitted the evidence; to which the defendant excepted. The evidence conduced to show that the defendant knew how said McKay was kept by the jailor."

There was other evidence in the case, which, however, has no connection with the points decided by this court.

" On this state of facts, the court charged the jury, that if they were satisfied from the evidence that the defendant discharged the duties of his office as sheriff so negligently that, in consequence of such negligence, said McKay left the jail, and went into the town of Troy, even though for a few minutes only, and with the intention to return, and although he did actually return, this was an escape in law, and they must find the defendant guilty. The defendant excepted to this charge, and requested

the court to instruct .the jury, that a negligent escape does not include a voluntary escape, but they are distinct offenses; and that if the jury believe from the evidence that the escape of said McKay, if there was any escape, was the result of the defendant's willful act, and not of his negligence, they must find the defendant not guilty. The court refused to give this charge, and the defendant excepted."

PUGH & BULLOCK, for the prisoner.—1. The declarations of Thompson were not competent evidence against the defendant, because the declarations of an agent impose no criminal liability on his principlal; and for the additional reason, that Thompson was a competent witness for the State.—Stewart v. State, 26 Ala. 44.

2. The charge asked by the prisoner ought to have been given. A voluntary escape is perfectly distinct from a negligent escape; the former being a felony, while the latter is only a misdemeanor. Neither includes the other, and most clearly the less cannot include the greater. If the defendant knew that McKay was permitted to go at large, and especially if it was by his instructions, then the escape was voluntary, and he could not be convicted of a negligent escape.—Code, §§ 3210–11.

M. A. BALDWIN, Attorney-General, *contra.*—1. As to the constituents of an escape, and the correctness of the charge given by the court, see Hawk. P. C. ch. 19, § 5; 1 Hale's P. C. 594; Allen on Sheriffs, 233, and authorities there cited; Luckey v. The State, 14 Texas, 400; State v. Halford, 6 Rich. (S. C.) 58; 6 English, 328; 24 Wendell, 381; 2 Murphy, 386.

2. As to the admissibility of Thompson's instructions to the jailor, see 2 Stark. Ev. 60; 12 Wheaton, 468; 2 Peters, 364.

3. That the charge asked by the defendant was properly refused, see Henry v. The State, 33 Ala. 398.

R. W. WALKER, J.—The charges of the court must be viewed in connection with the evidence which was before the jury. Thus considered, there was no error in

the instruction that, if "the defendant discharged the duties of his office as sheriff so negligently that, in consequence of such negligence, the prisoner left the jail, and went into the town of Troy, even though for a few minutes only, and although he did actually return, this was an escape, and the jury must find the defendant guilty." Roscoe's Cr. Ev. 414 ; 2 Hawkins' P. C. ch. 19, §§ 5, 6, 10, 13 ; Steeve v. Fields, 2 Mason, 486; Colby v. Sampson, 5 Mass. 310, 312; Lucky v. State, 14 Texas, 400 ; Riley v. State, 16 Conn. 47 ; 2 Bishop's Cr. L. § 917 ; Wilks v. Slaughter, 3 Hawks, 211; Adams v. Turrentine, 8 Ired. 143. If there had been any evidence that the jailor never lost sight of the prisoner, this, *possibly*, might have justified some qualification of the charge.—See 2 Hawk. P. C. *supra* ; 1 Russ. 421; 1 Hale's P. C. 602.

2. Under an indictment for a voluntary escape, the defendant may be convicted of a negligent escape, because the former offense includes the latter.—Smith v. Hart, 1 Brevard, 416; Fairchild v. Case, 24 Wend. 380, 383; Skinner v. White, 9 N. H. 204; Henry v. State, 33 Ala. 389. Consequently, under an indictment against a sheriff for a negligent escape, a conviction may be had on proof of a voluntary escape.—Henry v. State, *supra*. There was, therefore, no error in the refusal of the charge asked by the defendant.

3. The bill of exceptions shows, that Thompson was one of the deputies of defendant; that the defendant had instructed the jailor, that he must obey the orders of his deputies as his own ; and that, in consequence of these instructions, the jailor was in the habit of yielding obedience to the orders received from the defendant's deputies. Assuming that this evidence was sufficient to show that the defendant had authorized his deputy, Thompson, to give directions to the jailor in reference to the prisoners in his custody; yet, as every man is presumed to be innocent until his guilt is made manifest, this cannot be construed as an authority to Thompson to give any other directions than such as were legal, proper, and customary. 2 Greenl. Ev. § 68. The declarations of his agent do not bind the principal, if not within the scope of his agency,

18

or expressly authorized. The direction of the deputy to the jailor, to allow the prisoner the liberties enjoyed by him, was a command to violate the law—it was not a legal or proper direction, and was not within the scope of the authority conferred by the defendant. As a general rule, if an agent does an illegal act, the principal is not responsible for it *criminaliter*, unless it is shown that the act was done by his express authority.—Patterson v. State, 21 Ala. 572 ; Rex v. Higgins, 2 Str. 885 ; Hern v. Nichols, . 1 Salkeld, 289 ; Mitchell v. Mimms, 8 Texas, 6 ; Commonwealth, v. Lewis, 4 Leigh, 664. The court erred, in permitting the declarations of the deputy to go to the jury, as evidence against the defendant. If it had been shown that the defendant was cognizant of the orders which his deputy gave, and made no objection, the case might have been different.

Whether or not a sheriff is liable criminally, and, if so, how far, for an escape occasioned by the negligence or willful misconduct of the jailor, is a question which is not presented by the record, as it now stands, and on which it is not necessary for us to express our opinion.—See Roscoe's Cr. Ev. 412 ; 2 Hawk. P. C. ch. 19, § 29 ; Fell's case, 1 Salkeld, 272; 2 Bishop's Cr. L. § 922 ; Randolph v. Donaldson, 9 Cranch, 76; Comm. v. Lewis, 4 Leigh, 664.

The judgment is reversed, and the cause remanded.