## HOUPT *v.* STATE.

### Opinion delivered October 23, 1911.

1. INDICTMENT—STATUTORY OFFENSE.—While an indictment for a statutory offense must state all the ingredients essential to constitute such offense, it is sufficient ordinarily to follow the language of the statute. (Page 412.)

2. ESCAPE—SUFFICIENCY OF INDICTMENT.—An indictment of a sheriff for permitting a prisoner to escape, which alleges that defendant as sheriff and jailer had in his lawful custody a certain prisoner by virtue of a warrant of commitment for murder issued by the coroner, and that

such prisoner was remanded to defendant's custody by the circuit judge to be held under said warrant of commitment, sufficiently alleges that the prisoner was in defendant's lawful custody. (Page 413.)

3. SAME—SUFFICIENCY OF EVIDENCE.—Proof that a sheriff permitted a prisoner in his custody to go at large unattended will sustain a conviction of voluntarily permitting an escape under Kirby's Digest, section 1683. (Page 414.)

4. SAME—INTENT OF OFFICER.—The offense of voluntary escape, under Kirby's Digest, sec. 1683, consists in voluntarily suffering, permitting, or conniving at, the escape of a prisoner from custody or permitting him to go at large, and it is unnecessary to prove that this was done with the intent to save him from trial or the execution of a sentence. (Page 416.)

5. OFFICER—REMOVAL FOR MALFEASANCE.—Under Kirby's Digest, secs. 7992-3, providing for the removal of any officer who is convicted of malfeasance in office, a sheriff was properly removed from office upon his conviction of having voluntarily permitted a prisoner to escape. (Page 418.)

Appeal from Garland Circuit Court; *Calvin T. Cotham,* Judge; affirmed.

*Rector & Sawyer, J. E. Hogue, T. E. Rutherford, C. Floyd Huff, A. J. Murphy,* and *G. W. Murphy,* for appellant.

To sustain the charge in the indictment, the evidence must show that Murray escaped, went at large, and that, too, by appellant's volition. It does not show this, but that appellant removed Murray from the jail and put him in the keeping of guards with strict injunctions not to permit him to escape. While some evidence tends to show that the guards were sometimes lax, yet it does not show that appellant was aware of this laxity. It shows further, not only that Murray did not escape, but that, when indicted and suspended from office, appellant had the guards to bring Murray in and turned him over to the custody of his successor.

The expressions "to escape" and "to go at large" as used in the indictment are largely, if not altogether, synonymous. The volition of appellant is necessary to both. 16 Cyc. 539 and cases cited. 4 Cyc. 366; 53 Ark. 335, 336; 35 Ark. 439-444.

*Hal L. Norwood,* Attorney General, and *William H. Rector,* Assistant, for appellee.

Under the statute under which the indictment is presented and the evidence adduced, appellant was properly convicted. Kirby's Dig. § 1683; 29 Ark. 142; 32 Ark. 125; 37 Ark. 437;

63 Ark. 312; 11 Ark. 328; 6 Ark. 150; 14 Tex. 400; 73 S. W. (Ky.) 745; 34 Ala. 262; 5 Mass. 310; 40 N. J. L. 230; 5 T. R. 41 and cases cited; 84 N. Y. 445; 71 Me. 577; 16 Conn. 47; 14 R. I. 73; 11 Mad. 62; 2 Shaw 181; 7 C. & P. 720; 8 Ired. (N. C.) L., 147; 1 Hale, P. C. 597-602; Throop's Pub. Offices & Officers, § 759 and cases cited; Murfree on Sheriffs, § 190 A.

"Escape may be defined as the loss, before discharge by due process of law, of the *lawful custody* of a prisoner, whether voluntarily or negligently suffered." 16 Cyc. 538. "Any loss of physical control, even temporarily, is a loss of custody." *Id.* As to voluntary escape, see 49 N. H. 145; 30 S. W. 791, 792; 70 N. Y. Sup. 403, 404; 4 Johnson (N. Y.) 45, 48; 22 Fed. Cas. 1210, 1221; 10 N. C. 211, 216; 73 Ark. 315; 95 Ark. 100.

*G. W. Murphy, Rector & Sawyer, A. J. Murphy, C. Floyd Huff, T. E. Rutherford,* and *J. E. Hogue,* in supplemental brief for appellant.

The court was not authorized to impose any additional, higher or greater punishment or penalty on appellant than was authorized by the statute and assessed by the jury, and that part of the judgment removing the appellant from office should have been arrested.

Authority for such procedure is claimed under sections 2450, 7992, and 7993, Kirby's Digest; but it will be observed that appellant was not indicted for wilful neglect in the discharge of his duties, nor for any offense charged by the statute law or Constitution creating a forfeiture of his office. He was not indicted for incompetency, corruption, gross immorality, criminal conduct amounting to a felony, malfeasance, misfeasance or nonfeasance in office, but for permitting a voluntary escape, and there was nothing in the indictment to put him on guard as to the jeopardy of his office or to inform him that a conviction meant a forfeiture of his office.

FRAUENTHAL, J. The defendant, Sid Houpt, sheriff of Garland County, was indicted by the grand jury of that county charged with the crime of escape. He was convicted of that offense by a petit jury, who assessed against him a fine of one dollar and imprisonment of one hour in the county jail. A judgment was thereupon rendered, adjudging him to pay said

fine, undergo said imprisonment and removing him from office. He seeks by this appeal to obtain a reversal of that judgment.

The indictment alleged that the crime of escape was committed by said defendant as follows:    "The said Sid Houpt, in the county and State aforesaid, on the 15th day of February, 1911, being then and there sheriff and jailer of Garland County, and then and there, as such sheriff and jailer, having the lawful custody and charge of one Ben Murray, by authority of a warrant of commitment which had been issued by J. P. Randolph, on the 2d day of January, 1911, who was then and there coroner of said county, and issued said warrant of commitment as such coroner, charging therein the said Ben Murray with the crime of murder, which said warrant had been duly issued as aforesaid upon the verdict of the coroner's jury of said county, duly impaneled, rendered upon an inquisition duly held over the dead body of one Oscar Chitwood by the said coroner's jury on the 26th day of December, 1910, and until the 2d day of January, 1911; also by virtue of an order and judgment of the circuit court of Garland County, Arkansas, duly made and entered on the 31st day of January, 1911, upon hearing of the application for bail made by the said Ben Murray to W. H. Evans, judge of the said circuit court; that said order and judgment remanded the said Ben Murray to the custody of the sheriff of Garland County to be held and detained by him under said warrant of commitment issued by said coroner as aforesaid; the said Sid Houpt, in the county and State aforesaid, on the 15th of January, 1911, being then and there the sheriff and jailer of said county as aforesaid, and then and there having the lawful custody and charge of the said Ben Murray as aforesaid, did then and there unlawfully, voluntarily and contemptuously permit and suffer the said Ben Murray to escape from his custody and to go at large wheresoever he would; whereby the said Ben Murray did then and there escape from said custody and go at large wheresoever he would.    Contrary to the duties of the said Sid Houpt and against the peace and dignity of the State of Arkansas."

The defendant contends that the indictment does not state facts sufficient to constitute a public offense, and in the lower court he filed a motion to arrest the judgment upon that ground.    He urges that the indictment does not show that the

commitment, so issued by the coroner of Garland County, under which said Ben Murray was alleged to have been held by defendant was a lawful warrant, for the reason that it does not allege that the crime with which said Murray was charged was committed in Garland County. The prosecution in this case is based upon section 1683 of Kirby's Digest, which reads as follows: "If any officer, or his under officer or deputy, having the lawful custody of any prisoner for any cause whatever, shall voluntarily suffer or permit or connive at the escape of such prisoner from his custody or permit him to go at large, he shall, upon conviction, be punished in the same manner as if convicted of aiding or assisting such prisoner to escape." The offense charged by this indictment against the defendant is one created by statute. An indictment for a statutory offense must state all the ingredients essential to constitute such offense, but it is sufficient ordinarily to follow the language of the statute in charging the statutory offense. One of the essential elements constituting the crime of escape is that the prisoner was in the lawful custody of the officer, and this must appear from the allegations of the indictment. It is, however, sufficient to meet this requirement by general averments in the language of the statute that the prisoner was in the lawful custody of the officer. (16 Cyc. 544). By the provisions of our criminal code, an indictment is sufficient if it contains "a statement of the acts constituting the offense in ordinary and concise language, in such a manner as to enable a person of common understanding to know what is intended," and if the "act or omission charged is stated with such a degree of certainty as to enable the court to pronounce judgment of conviction according to the rights of the case." (Kirby's Digest, sections 2228 and 2243). The indictment in the case at bar charged that the defendant, as sheriff and jailer of Garland County, had in his lawful custody one Ben Murray by virtue of a warrant of commitment issued by the coroner of said county, charging said Murray with the crime of murder, in pursuance of a verdict of a coroner's jury of said county rendered upon an inquisition held over the dead body of one Oscar Chitwood. It also alleged that said Murray was remanded by the circuit judge of said county to the custody of the defendant, to be held and detained under said warrant of

commitment. These allegations, we think, were sufficient to show that said Murray was in the lawful custody of the defendant. In the case of *Martin* v. *State*, 32 Ark. 124, cited by counsel for defendant to sustain their contention, an indictment was returned for negligent escape, which was not a statutory offense, but one only at common law. The decision in that case can not, therefore, apply to a voluntary escape, which is a statutory offense. It has been uniformly held by this court that it is sufficient, in charging a statutory offense, to follow the language of the statute in event this would include every ingredient of the offense as fixed by such statute. We are of the opinion that the indictment in this case alleged sufficient facts to show that the custody of the prisoner was lawful.

It is earnestly insisted by counsel for defendant that the evidence adduced upon the trial of the case was not sufficient to warrant the verdict finding him guilty of voluntary escape. It appears from the testimony that an inquisition was duly held by a coroner's jury upon the dead body of one Oscar Chitwood, and that said jury found that said Chitwood came to his death at the hands of Ben Murray and others on January 26, 1910, in Garland County, and that said Murray should be held without bail to await the action of the grand jury. Thereupon the coroner issued a warrant of commitment for said Murray and delivered same to the defendant as sheriff of Garland County, under which he took said Murray into his custody. Thereafter an application for bail was made by said Murray to the judge of the Garland Circuit Court, which was denied, and said Murray was, by order of said circuit judge, remanded to the custody of said sheriff, to be held and detained by him under said commitment. The testimony on the part of the State tended to prove that the defendant received Murray into his custody under said warrant of commitment and placed him in jail, but that he was confined in said jail only for a short time. Murray was permitted by the defendant to leave the jail and go to various places in the city of Hot Springs and Garland County. He was allowed to go to the farm of defendant, a distance of ten miles or more from the jail, and there to stay for a number of days. Here he was sometimes engaged in driving cattle of his own and of others and in going about

at his will.   He was permitted by the defendant to go to his
home and there remain with his wife, and there he engaged in
playing cards and in other amusements, and while there
he was unattended on a number of occasions.   He was seen
in a public park in the city of Hot Springs while in company
with the sheriff or his· brother, yet in effect practically at
liberty.   From the time he was committed to the custody of
the defendant, about January 1, 1911, until April, 1911, when
the defendant was indicted herein, said Murray was scarcely,
if ever, placed in jail, but was, with the knowledge and consent
of the defendant, permitted to go where he desired in said
city and county and, in effect, unrestrained of his liberty.
The defendant testified that he had great confidence in said
Murray, and knew that he would not leave, but would be
present to answer the charge made against him.   On this
account he allowed him to go to various places in the county
and city, but always attended by a guard.   But, without·
giving in detail the manner in which he was thus guarded,
we think from the testimony that the jury were fully warranted
in finding that these persons who attended Murray were only
sent with him for the sake of appearances, and that they did
not, nor did the defendant intend for them to, restrain Murray
in his movements or deprive him of his liberty or actually
keep him in custody by any show of physical force.   The de-
fendant testified that he relied on the promises of Murray that
he would not leave, and that, as a matter of fact, the guard
was unnecessary to keep him from leaving.   But we are of the
opinion that, whatever the cause may have been, the sheriff
did not keep Murray in custody, either actual or constructive,
and did not restrain him of his free movements and of his liberty.
On the contrary, because of his friendship for him, or from
other reasons, he intended to, and did, permit Murray to go
at large about the city of Hot Springs and Garland County,
in effect unguarded and unrestrained by any show of physical
force.

An escape in law has two separate meanings.   The one
involves the act of the prisoner, the other the act of the officer
having him in custody.   When the prisoner goes away from
his place of lawful custody, the escape is the act of the prisoner;
when the prisoner is allowed to leave his place of confinement,

either negligently or voluntarily, by the officer having him in custody, the escape is the act of the officer. But in either event whether a person under lawful arrest and restrained of his liberty evades such arrest and restraint, either through his own act or by sufferance of the officer and goes at large before delivered by due course of law, an escape is committed. It is the duty of a sheriff to keep in custody a prisoner lawfully committed to him. The custody means keeping him either in actual confinement in jail or surrounded by physical force sufficient to restrain the prisoner from going at large or obtaining more liberty than the law allows. The jail, with its walls, may constitute the place of confinement, or the physical force thrown about the prisoner outside of the jail may constitute the legal custody; but, when such physical force is removed, it results in an escape. As is said in the case of *Wilkes* v. *Slaughter*, 3 Hawkes (N. C.) 211, "No moral obligation can be received as a substitute for it, although promises may be made and may be observed to remain in close jail, the moment compulsion and force are withdrawn, there is no legal custody, the prisoner becomes a free agent, there is no longer an imprisonment." In the case of *Richardson* v. *Rittenhouse*, 40 N. J. Law, 230, it was held that it was voluntary escape to allow a person arrested to go at large upon his promise to appear the next day and give bail, even though he voluntarily surrendered himself in the terms of the promise. In the case of *Nall* v. *State*, 34 Ala. 262, it was held that where a sheriff discharged his duties so negligently that a prisoner in consequence left the jail and went to the adjacent town, even though for a few moments, and actually returned, it was an escape. In the case of *Lynch* v. *Com.* (Ky.) 73 S. W. 745, it was held that when a prisoner was permitted to go to his home every Saturday night it constituted an escape. In *Luckey* v. *State*, 14 Tex. 400, it was held that when a convict committed to prison was permitted by the sheriff to go at large, he was liable for escape. 1 Hale, P. C. 596; 2 Bishop, New Cr. Law, § 1065. In 16 Cyc. 538, an escape is defined to be "the loss before discharge by due process of law of the lawful custody of a prisoner, whether voluntarily or negligently suffered." In order to constitute custody, there must be the presence of physical restraint or physical control; and when such restraint

or control is lost, there is a loss of custody, even though it may continue only temporarily. Murfree on Sheriffs, § § 193 and 1166.

As is said in the case of *Beard* v. *State*, 79 Ark. 293, "the law does not recognize any other method of holding a prisoner in custody charged with crime than by confinement in jail until examination or trial." If exceptional cases shall arise when he must of necessity be taken from jail temporarily, then he must be actually guarded and surrounded by such physical force as will not only deprive him of liberty but restrain him from any free movement of going whithersoever he may will.

It is urged that, before the defendant can be found guilty of the crime of voluntary escape, it is necessary to show that he permitted the prisoner to go at large or to escape with the intent to save him from trial or the execution of a sentence. But the offense of voluntary escape is created and defined by our statute, and it consists in voluntarily suffering, permitting or conniving at the escape of a prisoner from custody or permitting him to go at large by the officer having lawful custody of him. The statute does not provide that the officer must do this with the intent to save him from trial or the execution of a sentence, and therefore such intent is not one of the elements constituting this statutory offense. The only intent of the officer that is required in order to fasten upon him the guilt of this offense is to voluntarily suffer, permit or connive at the prisoner's escape from custody or to voluntarily permit him to go at large.

The instructions that were given by the court follow and correctly embody these principles. The court in part charged the jury as follows: (Q) You are instructed that to permit one to go at large as applied to a prisoner held for trial is to permit him to go whithersoever he will, without the restraint of either guard or prison walls. It is to let him go out of custody free from the restraint of custody and at his own will. A prisoner who is kept under guard by the sheriff, to whose custody and keeping he is committed, is not at large in the sense and meaning of the law." And also "(C) If you further believe from the evidence that the defendant, while so having the custody of said Murray, voluntarily and intentionally kept him out of

jail with the purpose and intention that he should not be confined in jail, and if you further believe from the evidence that the defendant, while so having the custody of said Murray and keeping him out of jail, voluntarily allowed the said Murray to be unguarded and to go at large, you will find him guilty as charged." And also: "(D). The indictment in this case charges the defendant with voluntarily permitting Ben Murray to escape from his custody and go at large, and you are instructed that, as to the question of intent involved in the charge, it is not necessary that the defendant should have had the intent to protect the said Murray from punishment of any offense for which he may have been in custody, but it is sufficient if the defendant at the time had the intent to allow or permit the said Murray to escape from his immediate custody and go at large." Other instructions were given, and, after a careful examination of those and also the ones which were refused, we fail to find that any error prejudicial to defendant was committed by the court in any ruling which it made relative to the instructions. We are of the opinion, after a careful examination of the testimony in this case, that there was sufficient evidence to sustain the verdict which was returned by the jury.

It is urged that the court erred in adjudging that the defendant should be removed from office. It is provided by section 7992 of Kirby's Digest: "Whenever any presentment or indictment shall be filed in any circuit court of this State against any county or township officer for incompetency, corruption, gross immorality, criminal conduct amounting to a felony, malfeasance, misfeasance or nonfeasance in office, such circuit court shall immediately order that such officer be suspended until such presentment or indictment shall be tried. * * * " And by section 7993 of Kirby's Digest it is provided: "Upon conviction of any such officer of any such offenses, a part of the sentence of the circuit court having jurisdiction shall be to remove such officer from office." The authority and direction thus given to the court to remove an offending officer from his office springs from the violation of the duties as a public officer which is committed knowingly and intentionally by him. When the officer is convicted of any malfeasance, misfeasance or nonfeasance in office, a part of the sentence of the court shall

be to remove such officer from office. A voluntary escape is a maladministration of office, and is such a violation of statutory law as to constitute a malfeasance. It is such a disregard and violation of official duties as will, under the above statute, forfeit the right to office. *State v. Stover,* 113 Mo. 202; *Bradford v. Territory,* 2 Okla. 228.

Finding that no prejudical error was committed in the trial of this case, the judgment is affirmed.