## MILLER *v*. STATE.

### Opinion delivered April 24, 1916.

1. HUSBAND AND WIFE—ABANDONMENT OF WIFE—SUFFICIENCY OF INDICTMENT.—An indictment charging the crime of wife abandonment, *held* valid.

2. HUSBAND AND WIFE—ABANDONMENT OF WIFE—SUFFICIENCY OF EVIDENCE.—Evidence held sufficient to support a conviction of defendant under act of 1909, page 134, denouncing the crime of abandonment and non-support of wife.

3. HUSBAND AND WIFE—ABANDONMENT OF WIFE—"WITHOUT GOOD CAUSE."—The words "without good cause," in the statute denouncing the act of abandoning a wife, as a crime, *held* to mean such cause as is a sufficient ground for divorce and the severance of the marital relation under the law.

**4.** EVIDENCE—CRIMINAL TRIAL—WIFE ABANDONMENT—LETTER.—In a prosecution for the crime of wife abandonment, where the wife, on cross-examination, was asked about certain statements contained in a certain letter written by the wife to the husband, the State may thereafter introduce the letter in evidence.

Appeal from Bradley Circuit Court; *Turner Butler,* Judge; affirmed.

### STATEMENT BY THE COURT.

Charles Miller prosecutes this appeal from a judgment of conviction of wife abandonment or desertion.

The indictment, formal parts omitted, alleges: "The said Charles Miller, in the county and State aforesaid, on or about the 1st day of July, A. D., 1915, then and there unlawfully and without good cause did abandon and desert his lawfully wedded wife, Della Miller, and then and there did neglect and refuse and fail to maintain and provide for his wife, the said Della Miller, contrary to the statute in such cases made and provided, and against the peace and dignity of the State of Arkansas."

A demurrer to the indictment was interposed and overruled.

It appears from the testimony that appellant was married to his wife Della Miller, on March 21, 1915, and they lived together as husband and wife at the home of his father until the first of July following. He was nineteen years old at the time of the marriage and she was eighteen the following July. She was treated as a member of the family and worked in the field most of the time along with her husband and the others. She stated that appellant told her the night before he took her home the next morning, which was the first intimation she had that he was displeased, that he was going to take her back to her father's house and leave her there, giving as his only reason that he did not need a wife and could not

make a living. She said after she was convinced that he was going to abandon her, she asked him to take her home and he did so and "while I was living with him he contributed to my support one pair of slippers. He has contributed nothing to my support since the 1st of July. I am expecting soon to become a mother." She stated further that she had done her best to make him a good wife and failed in no respect that she knew of. That she still loved him, but did not know that she would be willing to return now, under the existing conditions and live with him. She told her husband that she was going to become a mother, or thought so, on the day he took her home; that she did not object to working in the field with her husband, as she had worked in the field at home before marrying him. She also said that he had always treated her right.

Della's brother stated that he asked appellant why he brought his sister back home, to which he replied: "Well I decided I could not make a living for her and did not need no living for her." He insisted that that was no excuse and wanted to know the truth about it and appellant said "he didn't want to tell the truth, and that she would do things and keep it a secret, and she used snuff."

Albert Berthea stated that appellant had told him he quit his wife because she dipped snuff and also that his father gave him $10 to marry her as he had more work than he could do, "and that was as good a way as he knew to get a hand to work." Another witness stated, he said he would not give his reason for quitting his wife until he was put on the witness stand.

His father stated that appellant had no means of support of his own and brought his wife to his home to

live with him and that he made a certain agreement with his son whereby he was to deed him forty acres of land when he was twenty-one years of age and build him a house on it if he continued to work with him at home until that time. He stated also that he told Della if she wanted anything to tell him and he would buy it for her, that if Charley and Della had any difficulty, he did not know it, and noticed them as they lived in the house with him and that she worked in the field with his wife and himself.

Appellant's mother testified that Della appeared to be angry during the last week of her stay; that her husband treated her well, so far as she could tell and she did not know they were going to separate until the morning that Della went away. That she had never heard a quarrel between them; that after Della told her she was going away to stay, she requested her to talk to Charley, who was going to his work. He stated his wife wanted to go home and he was going to take her, that she would not give him any satisfaction or reason about it.

Appellant stated that he had made a contract with his father at the time he married and had been working under it a little over two years; that he had no property of his own when he got married; that he lived with his father and took his wife there to live. That they got along all right until about three weeks before she went home. Said that she told him when they married that she did not use snuff and he discovered afterwards that she had gotten to using it and he tried to get her to quit and she agreed to but did not. The quarrel about this lasted but a short time however, and his wife stated that she did not want to live with his people, that his home was not big enough for two families; that he insisted on her continuing there as he would lose his work on the contract if he quit. He stated that he did not have any money to buy clothes for her but wanted to get some

and did not want her to go back home without any new clothing. She said that that did not matter, and on the way home stated that she did not expect to live with him again, to which he replied, that he "had never begged a woman to live with him and never expected to." He denied having the conversations stated by the other witnesses about his reason for quitting his wife; said he tried to get her to come back and live with him and had written a letter to that effect, but made no effort to get her to return to him until after he was indicted.

His wife was asked on cross-examination if she had not written to him that she wanted a divorce and that if he would pay for it, she would set him free. She stated that she had said something in this letter about a divorce, but that she had written the letter, which was introduced over appellant's objection, insisting that he tell her why he had abandoned her. That the reason he had given would not do. The letter concluded: "It is too little excuse and if you bring anything up it is not so and I am ready and willing to face it and you will have to prove anything to show that I did not prove true to you. You know I went there and worked hard and what did I get? Nothing but one pair of slippers and what I eat. I wanted to get along with all of you, and you promised to get me some clothes and you have not got them yet, but that don't matter so bad, what I am after is your reason for leaving me, so write soon and tell me your excuse, for my mind will not be content until I do find out your reason and that is what I want to know at once."

*E. E. Williams*, for appellant.

1. The court erred in overruling the demurrer to the indictment and the testimony in insufficient to sustain the verdict. 168 S. W. (Mo.) 339 · 108 Ark. 76.

2. Improper evidence was admitted and the court erred in its instructions.

*Wallace Davis.* Attorney General, *Hamilton Moses,* Assistant, for appellee.

1. The demurrer was properly overruled. Acts 1909, 134; 102 Ark. 454; 98 *Id.* 577; 95 *Id.* 48; 94 *Id.* 65;

84 *Id.* 487; 26 *Id.* 323; 102 *Id.* 170. The indictment charges the crime in the words of the statute. This is sufficient. 12 Ark. 156; 39 *Id.* 216; 47 *Id.* 476; 49 *Id.* 499; 100 *Id.* 409; 72 *Id.* 382, etc.

2. The verdict was responsive to the evidence. 168 S. W. 339; 108 Ark. 79.

3. Della Miller's letter was properly admitted. 81 Ark. 579; 85 *Id.* 23; 86 *Id.* 145; 86 *Id.* 486.

4. There was no error in the court's charge. 70 Mo. 468; 114 Ark. 399; 109 *Id.* 510; 109 *Id.* 523; 102 *Id.* 186.

KIRBY, J., (after stating the facts). (1) It is contended that the court erred in overruling the demurrer to the indictment and that the testimony is insufficient to sustain the verdict. The indictment makes the charge in virtually the language of the statute, which does not contain the word "wilfully" in describing the offense and its allegations are sufficient. *State* v. *Witt*, 39 Ark. 216; *Houpt* v. *State*, 100 Ark. 409; *Petty* v. *State*, 102 Ark. 170.

The statute was held valid in *Green* v. *State*, 96 Ark. 175, and in *Dempsey* v. *State*, 108 Ark. 79, the court held that desertion alone of the wife did not constitute the offense, saying: "In order to make out the offense there must also be failure and neglect or refusal to maintain and provide for the wife and children. This means, of course, a wilful or negligent failure to provide, and not mere failure on account of inability. It does not necessarily mean, however, that there must be a complete failure in that respect, for an abandonment by a man of his wife and children, coupled with a wilful failure or neglect to adequately provide for their wants, would be sufficient to complete the offense."

(2) The undisputed testimony shows that appellant made no provision for his wife during the time they lived together, in the way of furnishing any clothing except a pair of slippers and that he made none whatever after deserting her, to the time of trial.

. , (3) It appears from his father's testimony that he could and would have supplied clothing if he had been requested so to do, and certainly appellant, who with his wife was working for his father, should have had no hesitancy in making such demand and providing such wearing apparel as she may have needed and his failure and refusal to do so can not be attributable to inability under the circumstances. The flimsy excuse given by appellant for quitting his wife, could not in any event be held to be good cause therefor. The statute in defining the offense in the use of the words "without good cause" evidently meant such cause as was a sufficient ground for divorce and severance of the marital relations under the law. *State* v. *Dvoracek*. 140 Iowa 266. 118 N. W. 399; *State* v. *Williams*, 116 S. W. 1128; *State* v. *Schweitzer*, 57 Conn. 532, 18 Atl. 788, 6 L. R. A. 125.

(4) No error was committed in permitting the introduction of the letter written to appellant by his wife, since on cross-examination by his attorney, she had been asked about certain things and statements contained therein, and was entitled to introduce the whole letter in explanation thereof. *Stuckey* v. *O'Neal*, 86 Ark. 145; *Mitchell* v. *State*, 86 Ark. 486.

Finding no prejudicial error in the record, the judgment is affirmed.