PERRYMORE v. STATE.

Crim. 3898.

Opinion delivered July 9, 1934.

*Evans & Evans, Sid White, Ray Blair* and *Robert J. White,* for appellant.

*Hal L. Norwood,* Attorney General, and *Robert F. Smith,* Assistant, for appellee.

SMITH, J. Appellant was the duly elected and acting sheriff of Logan County, and as such was the legal custodian of the prisoners confined in the jails of that county. He was indicted for permitting two of these prisoners to escape. One of these prisoners was named Richard Warren Holly, the other was named Ed Kleier, and both were under indictment for the commission of a felony. Appellant was suspended temporarily from his office upon the return of the indictment against him, and upon his conviction, his removal from office was made permanent, and he has prosecuted this appeal to reverse that judgment.

The authority and the duty of a sheriff in regard to the custody and control of prisoners confined to his keeping was thoroughly considered in the case of *Houpt* v. *State,* 100 Ark. 409, 140 S. W. 294, and the responsibil-

ity of a sheriff for the escape of a prisoner was so fully stated that the subject need not again be reviewed. It was there pointed out that it had been held in the case of *Martin* v. *State,* 32 Ark. 124, that permitting a prisoner to escape through the negligence of his custodian was not a statutory offense, but only one at common law, yet an indictment would lie for its commission, and a person convicted therefor was subject to removal from office, although the offense was only a misdemeanor and punishable as such under chapter 22, §§ 772-773, of Gantt's Digest, which appear as §§ 1432-1433, Crawford & Moses' Digest.

A question arose—which we find it unnecessary to decide—whether the indictment charged a common-law offense or a violation of the statute (§§ 2574-2584, Crawford & Moses' Digest), for the reason that the trial court construed the indictment as charging only a misdemeanor.

The theory upon which the case was tried is indicated by the questions which the court permitted the prosecuting attorney to ask the jurors in qualifying them for service. For instance, a juror was asked: "Q. If Bryan Godfrey, the deputy sheriff, permitted him (the prisoner) to escape, and Mont (appellant) knew or should have known about it, and the court tells you it would be your duty, would you convict?"

Logan County has two judicial districts, with a jail in each, one being located at Paris, the county seat, the other at Booneville, the town in which the courthouse and county jail for the Southern District of the county are located. The sheriff resides in Paris, and ordinarily visits Booneville when the circuit court is not in session at that place only about once each week. Bryan Godfrey, the person referred to in the question of the prosecuting attorney above quoted, resides in Booneville, and represents the sheriff there, and had charge of the jail at that place. There was testimony to the effect that Godfrey allowed Kleier, one of the prisoners referred to in the indictment, much freedom of action, but whether enough to constitute an escape under the law as declared in the Houpt case, *supra,* we need not decide, as he is not a

party to this proceeding. It was the theory of the prosecution that the sheriff himself was criminally responsible for the acts of his deputy; in fact, the court read § 2581, Crawford & Moses' Digest, as a part of one of the instructions given in the case, this being done over appellant's objection and exception. This section reads as follows: "If any officer, or his under officer or deputy, having the lawful custody of any prisoner, for any cause whatever, shall voluntarily suffer or permit or connive at the escape of such prisoner from his custody, or permit him to go at large, he shall upon conviction be punished in the same manner as if convicted of aiding or assisting such prisoner to escape."

The theory upon which the charge was defended is indicated by an instruction numbered 4 which was requested by appellant but was refused by the court. This instruction reads as follows: "If the jury should believe from the testimony that deputy sheriff and jailer, Bryan Godfrey, was guilty of a crime in connection with the escape of Holly and Kleier, or either of them, this will not be sufficient to authorize the jury to convict Mont Perrymore, unless the defendant, Perrymore, knew of and participated in, or consented to such criminal conduct, if any, on the part of the said Godfrey in connection with such escape."

It is our opinion, for reasons hereinafter stated, that this instruction was a correct declaration of law, and the refusal to give it was an error calling for the reversal of the judgment.

The most serious question in the case is whether, under the law as thus announced, there was any competent or sufficient testimony to support the verdict, and we have reached the conclusion, after giving the testimony tending to support the verdict its highest probative value, that there was not.

There appears to be no testimony that Holly, one of the prisoners who escaped, was accorded such freedom of action as to constitute an escape. The testimony relates to the liberty of movement accorded Kleier, but all this testimony relates to the conduct of Godfrey, and

it was not shown that the sheriff himself had authorized, or had consented to, or was aware of the fact, that Kleier was not kept properly confined. The only relevant testimony tending to show any knowledge of or any participation in Godfrey's conduct was given by appellant himself, who testified that the presiding judge had told him Godfrey was not sufficiently careful in his surveillance of Kleier. The undisputed testimony shows, however, that, immediately upon hearing the judge express this opinion, appellant directed Godfrey to confine Kleier in the jail, and he did so except that on certain occasions he took Kleier out of the jail to get coal and build fires, but Godfrey testified that this was done in his presence. On the night of the escape Kleier was not confined in a cell, but was locked up in what was called the "run-around," the area around and within the walls of the jail surrounding the cells. There was a lock to the door affording entrance to this run-around. Godfrey did not regard this as an unsafe thing to do, as Kleier had been twice tried upon the charge for which he was in jail, and there had been a mistrial in each case. This liberty was accorded that night because Kleier had been given salts and the commode was in the run-around. We are not required to decide whether this liberty would constitute an escape, as Godfrey was not on trial. In any event there is no testimony whatever to the effect that appellant knew of, or consented to, or connived at, the extension of even this liberty.

We have reached the conclusion that the negligence, if any, resulting in the escape of the prisoners was the sole act of Godfrey, and not that of appellant. We have also concluded that the judgment must not only be reversed, but, inasmuch as the case appears to have been fully developed, the cause should be dismissed.

The case of *State of Alabama* v. *Kolb,* 201 Ala. 439, 78 So. 817, considers the liability of an officer for the acts of his deputy, and is exhaustively annotated in 1 A. L. R. 218, from pages 218 to 264. On the liability of sheriffs, constables, and marshals, for the acts of their deputies, the annotator, at page 236, says: "The general rule has long since been settled that sheriffs and other officers

performing similar duties are liable civilly but not criminally for the acts and omissions of their deputies when acting officially or under color of the office. This general rule, which is recognized in and constitutes the basis of most of the decisions dealing with this phase of the question, is expressly stated in *Rogers* v. *Marshal,* (1863) 1 Wall. (U. S.) 644, 17 L. Ed. 714.'' A large number of cases are there cited which support the text just quoted.

Our own case of *Edgin* v. *Talley,* 169 Ark. 662, 276 S. W. 591, was a suit against a sheriff for a wrongful arrest made by his deputy, which was aggravated by an assault made by the deputy upon the person arrested, and we there held the sheriff was liable for the act of the deputy committed under the color of his office. We said: ''The general rule is that for all civil purposes the acts of a deputy sheriff or constable are those of his principal. Hence a sheriff or constable is liable for the act, default, tort, or other misconduct done or committed by his deputy, *colore officii.*''

But, unlike that case, this is not an action to enforce a civil liability. This is a criminal prosecution, and we have no statute imposing criminal liability on an officer for the act of his deputy which he did not authorize, or connive at, or consent to, or otherwise aid or abet in its commission.

It follows, from what we have said, that the judgment must be reversed, and the cause will be dismissed.